ELECTRONICALLY FILED
Craighead County Circuit Court in Jonesboro
Candace Edwards, Craighead Circuit Clerk
2019-Feb-18  15:42:36
16JCV-19-153
C02D09 : 61 Pages

IN THE CIRCUIT COURT OF CRAIGHEAD COUNTY, ARKANSAS
WESTERN DISTRICT
CIVIL DIVISION

MEREDITH FLYING SERVICE LLC

Plaintiff

vs.                                                        No. CV-2019-

OLD REPUBLIC INSURANCE COMPANY;
OLD REPUBLIC AEROSPACE, INC. f/k/a
PHOENIX AVIATION MANAGERS, INC.;
and PRIME TURBINES LLC

Defendants

## COMPLAINT

Comes the Plaintiff, Meredith Flying Service LLC, by and through its attorneys, Lyons &

Cone, P.L.C. and for its causes of action against Defendants, Old Republic Insurance Company,

Old Republic Aerospace, Inc. f/k/a Phoenix Aviation Managers, Inc., and Prime Turbines LLC,

and states:

## GENERAL ALLEGATIONS

1.      Plaintiff Meredith Flying Service LLC ("Meredith LLC") is a limited liability

company with its principal place of business in Craighead County, Arkansas.

2.      Defendant Old Republic Insurance Company ("Old Republic Insurance") is a

Pennsylvania Miscellaneous Business Corporation and upon information and belief its principal



place of business is in Pennsylvania, but it does or has conducted business in the State of Arkansas.

3.     Defendant Old Republic Aerospace, Inc., formerly known as Phoenix Aviation Managers, Inc. ("Old Republic Aerospace"), is a Delaware corporation and upon information and belief its principal place of business is in Georgia, but it does or has conducted business in the State of Arkansas.

4.     Defendant Prime Turbines LLC ("Prime Turbines") is a Delaware limited liability company and upon information and belief its principal place of business is in Texas and conducted business in the State of Arkansas where the engine to the Aircraft in question was originally delivered.

5.     The events giving rise to this cause of action occurred in Jonesboro, Craighead County, Arkansas.

6.     Darrell Meredith ("Meredith") was the sole member of Meredith LLC at all pertinent times, and continues to be the sole member of Meredith LLC.

7.     This court has jurisdiction over this cause of action and the parties thereto and venue is proper herein.

8.     In November, 2011, Meredith LLC purchased the 2002 Air Tractor AT-602 ("Aircraft").

9.     On or about January 28, 2014, an insurance policy AA 000872-01 ("Aero Ag Policy") was taken out by Meredith LLC from Old Republic Insurance on the Aircraft for Seven Hundred Fifty Thousand and 00/100 Dollars ($750,000.00).  (Attached hereto and incorporated by reference herein as Exhibit 1 is a true and correct copy of the Aero Ag Policy).

10.     On or about January 28, 2014, endorsements were issued to policy AA 000872-01

("Endorsements"). (Attached hereto and incorporated by reference herein as Exhibit 2 is a true and correct copy of the Endorsements).

11.      Old Republic Aerospace, formerly known as Phoenix Aviation Managers, Inc., is the Aviation Manager under the Aero Ag Policy. Old Republic Aerospace is the agent/producer of Old Republic Insurance (collectively "Old Republic Defendants").

12.      On or about February 26, 2014, Doug Davidson of Davidson Solid Rock Insurance Agency ("Davidson"), Meredith's independent insurance agent, mailed the Aero Ag Policy to Meredith LLC.

13.      On or about June 5, 2014, the Aircraft was severely damaged in a storm ("the Storm") in Craighead County, Arkansas.

14.      On or about June 5, 2014, Davidson Solid Rock Insurance notified Old Republic Defendants that Meredith LLC had an insurance claim for damage to the Aircraft under the Aero Ag Policy because of the Storm.

15.      On or about June 7, 2014, Tim Westbrook ("Westbrook"), an Old Republic Defendants' employee or agent, told Meredith that Old Republic Defendants would not open the Aircraft's engine to inspect the engine for damage, even before an Old Republic Defendants' adjuster had seen the plane in person.

16.      On or about July 7, 2014, R.T. Turbines, Inc. ("R.T. Turbines") signed off on a propeller strike inspection and repair on the power section of the engine of the Aircraft.

17.      On or about July 7, 2014, R.T. Turbines sent Invoice No. 02366 for a gear section replacement.

18.      On or about July 30, 2014, George's Aircraft Repair returned the Aircraft to Meredith LLC for return to service.

19.     On or about August 18, 2014, Old Republic Defendants made Payment Number 1 for Two Hundred Sixty Eight Thousand Two Hundred Six and 91/100 Dollars ($268,226.91) for airframe and engine repair on the Aircraft to George's Aircraft Repair and R.T. Turbines.

20.     On or about August 21, 2014, Meredith LLC paid George's Aircraft Repair One Thousand Seven Hundred Forty Three and 80/100 Dollars ($1,743.80) for repairs to the Aircraft.

21.     On or about March 9, 2015, Old Republic Defendants made Payment Number 2 for Eight Thousand Nine Hundred Twenty Four and 49/100 Dollars ($8,924.49) for a supplemental airframe repair and flap replacement.

22.     On or about June 6, 2015, Meredith noticed that a bearing on the Aircraft was squealing.

23.     On or about June 16, 2015, Ag Air Maintenance Services, Inc. ("Ag Air") removed the Aircraft's engine and sent it to R.T. Turbines for repairs.

24.     On or about June 17, 2015, an Old Republic Defendants' employee or agent had a conversation with a mechanic about repairs on the Aircraft. The Old Republic Defendants' employee or agent refused to allow Meredith to participate in the conversation or even listen to the conversation between the Old Republic Defendants' employee or agent and the mechanic.

25.     On or about June 18, 2015, R.T. Turbines sent Invoice No. 12512 for Ninety Five Thousand Twenty and 86/100 Dollars ($95,020.86) for bearing replacement and balanced compressor assembly.

26.     On or about June 19, 2015, Ag Air reinstalled the engine on the Aircraft.

27.     On or about July 13, 2015, Chris Dannacker ("Dannacker"), an Old Republic Defendants' employee or agent, emailed Meredith notifying him that Dannacker was replacing Westbrook and that Dannacker would be handling Meredith LLC's claim on behalf of Old

Republic Defendants.

28.     On or about July 30, 2015, Meredith LLC made a payment to Ag Air for Forty Five Thousand and 00/100 Dollars ($45,000.00) for a CT Ring.

29.     On or about August 18, 2015, Old Republic Defendants made Payment Number 3 for Seventy Two Thousand One Hundred Forty Two and 60/100 Dollars ($72,142.60).

30.     On or about August 24, 2015, Meredith LLC made a payment for Seventy Two Thousand Seven Hundred Eighty Two and 75/100 Dollars ($72,782.75) to Ag Air for repairs to the Aircraft.  Meredith made this payment via insurance repayment from Old Republic Defendants.

31.     On or about August 28, 2015, Davidson informed Westbrook and Old Republic Defendants that the Aircraft needed additional repairs because of damage from the Storm.

32.     On or about September 12, 2015, Ag Air removed the Aircraft's engine and sent it to R.T. Turbines for repair because the engine continued to vibrate and because there was metal in the oil.

33.     On or about September 14, 2015, R.T. Turbines sent Invoice No. 02546 for Nine Thousand Nine Hundred Three and 05/100 Dollars ($9,903.05) for metal in the oil.

34.     On or about September 15, 2015, Ag Air reinstalled the engine in the Aircraft.

35.     On or about September 16, 2015, Meredith paid Six Thousand and 00/100 Dollars ($6,000) for Invoice No. 02546 to R.T. Turbines.

36.     On or about September 17, 2015, Davidson emailed Old Republic Defendants notifying them that the Aircraft still had a bad engine vibration and overheated on start-up.

37.     On or about October 2, 2015, Ag Air removed the Aircraft's engine and sent it to Prime Turbines.

38.     On or about October 27, 2015, Old Republic Defendants were notified of Prime Turbines' estimate for One Hundred Eighty Five Thousand Three Hundred Thirty Eight and 72/100 Dollars ($185,338.72) for additional repairs to the Aircraft.

39.     On or about November 15, 2015, Prime Turbines issued an Engineering Condition Report for the repairs to the Aircraft.

40.     On or about January 29, 2016, Lee Coffman of Aero Services Unlimited, investigated and inspected the Aircraft's engine at Prime Turbines on behalf of Old Republic Defendants.

41.     On or about February 17, 2016, Lee Coffman sent a report to Old Republic Defendants stating that the Aircraft's engine damage was caused by high time issues and ordinary wear and tear and was not caused by the event on June 5, 2014 (the Storm).

42.     On or about February 19, 2016, Old Republic Defendants denied Plaintiff's insurance claim for One Hundred Eighty Five Thousand Three Hundred Thirty Eight and 72/100 Dollars ($185,338.72) for additional repairs to the Aircraft because of the Storm.

43.     Old Republic Defendants never paid Prime Turbines for the estimate of One Hundred Eighty Five Thousand Three Hundred Thirty Eight and 72/100 Dollars ($185,338.72) for additional repairs to the Aircraft because of the Storm.

44.     Plaintiff currently has a bill for Twenty Thousand Three Hundred Ninety Seven and 82/100 Dollars ($20,397.82) with Prime Turbines for additional repairs to the Aircraft because of the Storm.

45.     The Aircraft is still damaged as of the date this Complaint was filed and is not serviceable or usable.

## COUNT I
## BREACH OF CONTRACT AGAINST OLD REPUBLIC
## INSURANCE AND OLD REPUBLIC AEROSPACE

46.     Plaintiff realleges and reaffirms all the allegations set forth in this Complaint.

47.     There existed a valid contract between Plaintiff and Old Republic Defendants in the form of the Aero Ag Policy and the Endorsements.

48.     Under the Aero Ag Policy, the following provisions describe Old Republic Defendants' responsibilities to pay Plaintiff or claims submitted by Plaintiff because of the damage the Aircraft suffered in the Storm:

    a.     ALL RISKS WHILE IN MOTION AND NOT IN MOTION (COVERAGE L): If this coverage has been purchased, the insured is protected if the aircraft suffers any kind of direct and accidental physical damage or loss.

    b.     TOTAL LOSS - The aircraft is a total loss if: (a) The cost to repair the aircraft when added to the salvage value is equal to or exceeds the insured value.

    c.     PARTIAL LOSS - If the aircraft is damaged but is not a total loss, the Company will pay the reasonable cost of repair, but the Company will not pay more than the insured value less the applicable deductible. Cost of repair includes necessary labor at straight time rates, parts and the cost of replacement parts less depreciation, and the least expensive transportation charges necessary to the repair of the aircraft and its return to the place where the damage occurred or to the home airport, which ever is nearer.

49.     All damage to the Aircraft and the engine of the Aircraft was caused by the Storm and was covered by the Aero Ag Policy and the Endorsements.

50.     The Aircraft had an Insured Value under the Aero Ag Policy and the Endorsements of Seven Hundred Fifty Thousand and 00/100 Dollars ($750,000.00).

51.     Old Republic Defendants breached the Aero Ag Policy and Endorsements

between Plaintiff and Old Republic Defendants by not paying Plaintiff the Insured Value of the Aircraft.

52.     In the alternative, Old Republic Defendants breached the Aero Ag Policy and Endorsements between Plaintiff and Old Republic Defendants by denying Plaintiff's claim for Prime Turbines' estimate for One Hundred Eighty Five Thousand Three Hundred Thirty Eight and 72/100 Dollars ($185,338.72) on February 19, 2016.

53.     As a result of Old Republic Defendants' breaches, Plaintiff has suffered damages in an amount to be determined which amount is greater than the amount necessary for federal diversity jurisdiction.

54.     Plaintiff is entitled to a judgment from and against Old Republic Defendants in an amount to be determined which amount is greater than the amount necessary for federal diversity jurisdiction.

55.     Plaintiff is entitled to recover its costs and attorney's fees for Old Republic Defendants' breach of contract of the Aero Ag Policy and the Endorsements.

56.     Plaintiff is also entitled to all of its remedies under A.C.A. § 23-79-208, including the amount of the loss, twelve percent (12%) damages upon the amount of the loss, together with all reasonable attorney's fees for the prosecution and collection of the loss.

## COUNT II
## BAD FAITH BY OLD REPUBLIC INSURANCE
## AND OLD REPUBLIC AEROSPACE

57.     Plaintiff realleges and reaffirms all the allegations set forth in this Complaint.

58.     Old Republic Defendants committed affirmative misconduct without a good-faith defense, which was dishonest, malicious, and oppressive in an attempt to avoid liability under the Policy.

59.    Old Republic Defendants committed the following affirmative misconduct which was dishonest, malicious and oppressive, as well as committed other misconduct:

    a.    Old Republic Defendants placed their own interests above Plaintiff's interests.

    b.    Mr. Westbrook, an employee or agent of Old Republic Defendants, told Mr. Meredith the second day after the storm that Old Republic Defendants were not going to be responsible for the Aircraft's engine, and that if Mr. Meredith had a repair shop or repairman open the engine then Mr. Meredith would be responsible for that decision.

    c.    Old Republic Defendants arbitrarily decided that Old Republic Defendants would not allow inspection of the engine even though no Old Republic Defendants' adjuster had looked at the Aircraft at that point.

    d.    On or about June 17, 2015, an Old Republic Defendants' employee or agent had a conversation with a mechanic about repairs on the Aircraft. The Old Republic Defendants' employee or agent refused to allow Meredith to participate in the conversation or even listen to the conversation between the Old Republic Defendants' employee or agent and the mechanic.

    e.    Several times Old Republic Defendants directed various repair shops not to follow the Pratt and Whitney guidelines while making repairs on or to the Aircraft.

    f.    Upon information and belief, Mr. Coffman's report inflated the engine hours by approximately 400 hours.

g.   Old Republic Defendants used at least four (4) adjusters and claims representatives throughout the claims and repairs processes for the Aircraft.

h.   Old Republic Defendants arbitrarily denied Plaintiff's legitimate claims for damage done to the Aircraft because of the Storm.

60.   Plaintiff sustained damages because of Old Republic Defendants' affirmative misconduct.

61.   Old Republic Defendants acted in bad faith in an attempt to avoid liability under the Aero Ag Policy issued to Plaintiff.

62.   Old Republic Defendants' conduct proximately caused damage to Plaintiff.

63.   Additionally, as a result of their willful, wanton and intentional actions, Old Republic Defendants knew or ought to have known in light of the surrounding circumstances that their conduct would naturally and probably result in injury or damage and that Old Republic Insurance continued such conduct with malice or in reckless disregard of the consequences from which malice may be inferred.

64.   As a result, Plaintiff is also entitled to a judgment from and against Old Republic Defendants in an amount to be determined for compensatory damages suffered and for punitive damages which amount is greater than the amount necessary for federal diversity jurisdiction, as well as their costs and attorney's fees.

## COUNT III
## INJUNCTIVE RELIEF AGAINST PRIME TURBINES

65.   Plaintiff realleges and reaffirms all the allegations set forth in this Complaint.

66.   This Count is brought against Prime Turbines LLC.

67.     Currently Prime Turbines has possession of the engine of the Aircraft.

68.     Prime Turbines claims that Plaintiff owes Prime Turbines Twenty Thousand Three Hundred Ninety Seven and 82/100 Dollars ($20,397.82).

69.     Plaintiff disputes the amount that Prime Turbines claims Plaintiff owes it.

70.     Plaintiff does not currently have the ability to pay Prime Turbines.

71.     The engine of the Aircraft is a crucial piece of evidence in Plaintiff's counts against Old Republic Defendants.

72.     Plaintiff intends to pay Prime Turbines upon the successful completion of its causes of action against Old Republic Defendants.

73.     Plaintiff has a substantial likelihood of success in its claims against Old Republic Insurance, Old Republic Aerospace and Prime Turbines when Plaintiff's claims are heard on the merits.

74.     Plaintiff seeks a temporary injunction and permanent injunction ordering Prime Turbines to continue storing the engine of the Aircraft, and to not alter or dispose of the engine in any manner until after the conclusion of all of Plaintiff's litigation against Old Republic Defendants and Prime Turbines.

75.     Therefore, this Court should issue a temporary and permanent injunction ordering Prime Turbines to continue storing the engine of the Aircraft, and to not dispose of the engine or alter the engine in any manner until after the conclusion of all of Plaintiff's litigation against Old Republic Defendants and Prime Turbines.

WHEREFORE, Plaintiff Meredith Flying Services LLC, prays as follows:

(a)     for judgment from and against Defendants Old Republic Insurance Company and Old Republic Aerospace, Inc. f/k/a Phoenix Aviation Managers, Inc. in an amount to be

determined for compensatory damages which amount is greater than the amount necessary for federal diversity jurisdiction as to Counts I-II;

    (b)    for judgment from and against Defendants Old Republic Insurance Company and Old Republic Aerospace, Inc. f/k/a Phoenix Aviation Managers, Inc. in an amount to be determined for punitive damages which amount is greater than the amount necessary for federal diversity jurisdiction as to Count II;

    (c)    for a temporary injunction and permanent injunction against Defendant Prime Turbines LLC ordering Prime Turbines LLC to continue storing the engine of the Aircraft and to not dispose of the engine or alter the engine in any manner until after the conclusion of all of Plaintiff's litigation against Old Republic Defendants and Prime Turbines;

    (d)    for its costs, interest and attorney's fees;

    (e)    for all other proper relief to which this Plaintiff may be entitled; and

    (f)    Plaintiff hereby demands a trial by jury of all issues triable by a matter of right to a jury.

> LYONS & CONE P.L.C.
> P.O. Box 7044
> Jonesboro, AR 72403
> (870) 972-5440
>
> By: _J. Lyn_
> State Bar No. 77083
> Attorneys for Plaintiff

F:\WP60\MEREDITH\Meredith.Old.Republic.Complaint.v2.wpd



Aerial Application
Insurance Policy



PHOENIX AVIATION MANAGERS, INC.



**EXHIBIT**

1

0 (01-14)

**Issuing and Policyholder Servicing Offices:**

**Phoenix Aviation Managers, Inc. (Corporate Office)**
1990 Vaughn Road, Suite 350
Kennesaw, Georgia 30144
Phone: (770) 590-4950
Fax: (770) 590-0599

| | |
|---|---|
| **Phoenix Aviation Managers, Inc.**<br>15660 North Dallas Parkway, Suite 400<br>Dallas, Texas 75248<br>Phone: (972) 991-7223<br>Fax: (972) 490-7069 | **Phoenix Aviation Managers, Inc.**<br>2300 Cabot Drive, Suite 150<br>Lisle, Illinois 60532<br>Phone: (630) 369-1076<br>Fax: (630) 369-1221 |
| **Phoenix Aviation Managers, Inc.**<br>199 Water Street, 30th Floor<br>New York, New York 10038<br>Phone: (212) 607-2624<br>Fax: (212) 607-2614 | **Phoenix Aviation Managers, Inc.**<br>555 S. Renton Village Place, Suite 550<br>Renton, Washington 98057<br>Phone: (425) 277-7407<br>Fax: (425) 277-0112 |

PART III

THE POLICY AND COVERAGES

This is your **AEROAGPOLICY**. It is designed to meet a variety of your aerial application aircraft insurance needs.

A number of different coverages are available under this policy. Some protect the insured against physical damage or loss to the aircraft. Others offer the insured protection against claims for bodily injury and property damage to someone else. The different coverages available are described in the text of the policy.

THIS POLICY PROVIDES ONLY THOSE COVERAGES FOR WHICH A PREMIUM IS PAID AND FOR WHICH A LIMIT OF LIABILITY IS SHOWN IN PART I.

Throughout this policy, the word named insured means the person, persons, or organization indicated as the named insured in PART I . The Company means the insurance Company named in PART I. Aviation Manager means Phoenix Aviation Managers, Inc.

AIRCRAFT - When the policy refers to the aircraft, it means the named insured's airplane or helicopter described in PART II including the following:

> the engine(s), propeller(s), tools, and repair equipment that are
> designed standard by the manufacturer of the aircraft and that are
> located in the aircraft for which coverage has been purchased;

> the radio, navigation, and operational equipment usually attached;

> spray booms, hoppers, and related aerial application equipment usually attached, and;

> any detached parts that have not been replaced by similar parts.

The named insured must either own the aircraft solely or in part, as endorsed, or must hold it under a written lease with a term of at least one (1) year.

PURPOSE OF USE - The aircraft must be used only for the purpose shown in PART II. If the aircraft is used for any other purpose and the named insured or any insured under this policy knows it is used for any other purpose, the Company will not provide any coverage under this policy while the aircraft is being used for any purpose not shown in PART II.

WHO CAN FLY THE AIRCRAFT - When the aircraft is in flight, the aircraft must be operated by the pilot or pilots named in PART II or by a pilot who meets the minimum qualifications described in PART II. The pilot must hold the proper and current medical and pilot certificates with appropriate ratings and qualifications as required under the current Federal Aviation Administration regulations for the flight involved.

WHERE THE INSURED IS COVERED - Subject to all terms and conditions of this policy, the insured is covered during the policy period while the aircraft is within the United States of America (excluding Alaska and Hawaii).

PART IV

EXCLUSIONS APPLICABLE TO ALL OVERAGES
(SEE ADDITIONAL EXCLUSIONS IN PARTS VII, VIII, and IX)

The Company will not cover bodily injury, property damage, or physical damage or loss to the aircraft:

(1) when the aircraft:

> (a) is leased or rented to anyone or if the insured is charging anything
> of value for its use;

> (b) is used for any unlawful purpose;

(c) is operated in violation of any Federal Aviation Administration regulation   which applies to repairs, alterations or inspections;

(d) does not have a Restricted Airworthiness Certificate in full force and effect or when the aircraft Airworthiness Certificate has been converted to experimental;

(e) is operated in violation of the terms of its Federal Aviation Administration Airworthiness Certificate;

(f) is operated in flight by a pilot who is not named in PART II; by a pilot who does not meet the minimum qualifications described in PART II; or by a pilot who, even if named in PART II, does not hold the proper and current medical and pilot certificates with appropriate ratings and qualifications required under the current Federal Aviation Administration regulations applicable to the flight involved.

(g) has a total of more than two (2) seats including all passengers and crew seats or carries more than two (2) persons, unless otherwise amended by endorsement;

(h) is equipped for water take-off or landing;

(i) is used for the transportation of illegal cargo or any cargo which includes any explosive material

(j) is performing or attempting to perform charter, cargo carrying for hire (except agricultural seeds, fertilizers, fungicides, insecticides, herbicides, defoliants, desiccants or chemicals for the purpose of agricultural operations), instruction, rental, closed course racing, photography less than 500 feet above the surface, mineral exploration, hunting, herding, tracking or observing animal or fowl, the towing of any object, pipe line, power line or telephone line patrol, fish spotting, firefighting, parachute jumping not required by an unexpected emergency, or newspaper delivery, unless such activity is specifically included by an endorsement attached to this policy;

(k) is used for the aerial application of any agricultural seeds, fertilizers, fungicides, insecticides, herbicides, defoliants, desiccants or chemicals which have not been approved for aerial application by each of the federal, state, or local agencies from whom such approval is required:

(1) is used for: smoke or fire patrol, firefighting or control except as respects emergency assistance provided for wildfire control and provided further that the named insured's total flying hours for this use does not exceed five (5) hours during the policy period; aerial ignition/ controlled burning; or any activity in support of those uses whether intentionally or unintentionally set.

(2) when caused by an intentional act committed by the named insured, an insured, or any person or organization using or operating the aircraft.

(3) arising from war, invasion, civil war, revolution, rebellion, insurrection, or warlike operations, whether there be a declaration of war or not.

(4) arising from capture, confiscation, seizure, arrest, restraint, or detention or the consequences thereof or of any attempt thereat, or taking of the property insured or damage to or destruction thereof by any government or governmental authority or agent (whether secret or otherwise) or by any military, naval or usurped power, whether any of the foregoing be done by way of requisition or otherwise and whether in time of peace or war and whether lawful or unlawful.

(5) if the insured may be held liable by reason of: causing or contributing to the intoxication of any person; the furnishing of alcoholic beverages to a person under legal drinking age or under the influence of alcohol; or any statute, ordinance, or regulation relating to the sale, gift, distribution, or use of alcoholic beverages or any illegal or controlled substance.

(6) if the damage to a turbine aircraft or auxiliary power unit is caused by foreign objects, other than by ingestion of such foreign objects, or is caused by heat or temperature change from engine operation, attempted operation, or shut down.

PART V

GENERAL PROVISIONS

This part describes certain additional obligations the insured has under this policy. It also explains the company's rights and certain general provisions that apply throughout this policy.

OTHER INSURANCE

If there is other insurance protecting the insured for an occurrence covered by this policy, the Company will pay the percentage portion that the applicable limit of liability of this policy bears to the total applicable limit of liability of all other policies. If there is other insurance covering the occurrence issued through the Aviation Manager, the Company will not pay more than the limits of liability of the policy having the highest limits.

TEMPORARY USE OF SUBSTITUTE AIRCRAFT

While an aircraft owned by the named insured is withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction, such liability insurance as is afforded by this policy with respect to such aircraft applies also with respect to another aircraft of similar type, horse power, seating capacity to that owned by the named insured while temporarily used as a substitute. This provision does not provide coverage to the owner of the substitute aircraft or any agent or employee of such owner.

TRANSFER OR ASSIGNMENT OF THIS INSURANCE

Neither the insured nor any other person or organization covered under this policy can transfer or assign this insurance without the written consent of the Aviation Manager.

CHANGING THIS POLICY

Any named insured can change this coverage by having the Aviation Manager add an endorsement to this policy. Notice to the named insured's agent will not constitute notice to the Company.

MINIMUM EARNED PREMIUM SCALE

| Days Coverage In Force | Minimum Earned Premium |
|---|---|
| 1  -  30 | 33% of Annual Premium |
| 31 -  60 | 60% of Annual Premium |
| 61 -  90 | 75% of Annual Premium |
| 91 - 120 | 85% of Annual Premium |
| Over 120 | 100% of Annual Premium |

If the Company cancels because the insured has not paid the premium, the Company or the Aviation Manager will mail a notice of cancellation to the named insured at the address shown in Part I, allowing the named insured at least ten (10) days from the date of mailing the notice before coverage will end. Proof of mailing or delivery of the notice is sufficient proof of notice. The Company will earn premium for the days the named insured had coverage by using the Minimum Earned Premium Scale above.

If the Company or the Aviation Manager cancels this policy for any reason other than for nonpayment of premium, the Company will mail a notice of cancellation to the named insured at the address shown in Part I allowing at least thirty (30) days from the date of mailing the notice before coverage will end. Proof of mailing or delivery of the notice is sufficient proof of notice. The Company will compute the premium earned based on the percentage of the original policy period for which coverage was provided. Any premium the Company has not earned will be returned to the named insured, but refunding the return premium is not a condition of cancellation.

If the Company pays for a total loss of an aircraft, then the annual physical damage premium is fully earned.

### NONRENEWAL

If the Company decides not to renew this coverage, the Aviation Managers will mail or deliver to the named insured in Part I written notice of nonrenewal not less than thirty (30) days before the expiration date.

### PREMIUMS

The named insured shown in Part I is responsible for the payment of all premiums.

### REPRESENTATIONS

By accepting this policy the named insured agrees: the statements is Parts I & II are accurate and complete; those statements are based upon representations of the named insured to the Company, Aviation Managers, and any of their agents relating to this insurance; the Aviation Managers have issued this policy in reliance upon the named insured's representation as made in the application.

### VOIDING THIS POLICY

This policy shall be void if the named insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or in case of any fraud or attempted fraud or false swearing by the named insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss.

### INSPECTION AND AUDIT

The insured agrees to let the Company inspect the property and operations at any reasonable time. These inspections are made solely for the company's benefit. The insured cannot use them as proof or as guarantee by the Company that the insured complied with any safety, health, or legal regulation.

The insured also agrees to let the Company examine the books and records kept that concern the use, ownership, or maintenance of the aircraft. The Company can make these audits up to three (3) years after the end of the policy period or until all claims for losses are settled by the Company.

### SUITS AGAINST THE COMPANY

The insured agrees not to bring any suit or legal action against the Company to recover payment unless the insured has complied with the terms of the policy.

Neither the insured nor his legal representative will do anything that interferes with the Company's right either to collect for damages caused by others or to defend the insured in any suit brought against the insured. Also, nothing in this policy gives any person or organization the right to join the Company in defending a suit brought against the insured.

The Company will investigate and settle a loss as deemed reasonable, appropriate, and expedient.

The Company will remain responsible under this policy even if the insured or the insured's estate files for bankruptcy protection or becomes insolvent.

### COMPLIANCE WITH STATE LAWS

If necessary, the Company will amend the terms of this policy to comply with the law of the state where this policy is issued.

### FINANCIAL RESPONSIBILITY LAWS

When this policy is certified as proof of financial responsibility under any financial responsibility law, the insurance provided by this policy for bodily injury liability and property damage liability shall comply with the provisions regarding the coverage and limits of liability required by such law, but not in excess of the applicable limit of liability stated in this policy. The insured agrees to reimburse the Company for that part of any payment the Company is required to make under this law which is in excess of what otherwise would have been made under this policy.

<u>NO BENEFIT TO OTHERS</u>

This insurance is for the insured's benefit alone and not for any other person or organization liable for loss to the aircraft. The insurance cannot be assigned to any other person or organization.

<u>ADDITIONAL LIABILITY COVERAGE</u>

Subject to the terms, conditions, and exclusions of this policy, the following coverages are payable in addition to the limits of liability shown in PART I.

<u>DEFENDING SUITS</u> - In the event a suit is brought against an insured seeking damages for bodily injury or property damage covered by this policy, the Company will defend the insured even if the suit is groundless. The Company will pay the costs incurred to defend the insured or to settle a claim. The Company will also pay any interest that is owed on the amount of a judgment not exceeding the limit of our Liability Coverage. The Company will not be obligated to pay any claim, judgment, award or claims expenses or to undertake or continue the defense of any suit or proceedings after the applicable limit of liability has been exhausted by payment of settlements or judgments or after the applicable limit of liability has been deposited in a court of competent jurisdiction; and, in such a case, the Company will have the right to withdraw from providing or paying for further defense by tendering control of said defense to the insured.

<u>EXPENSES</u> - The Company will also reimburse an insured for all reasonable expenses incurred by the insured while helping us at our request. The Company will not, however, pay for loss of earnings or salaries of the insured's employees. Further, the Company will pay all necessary expenses for first aid to others for bodily injury to which this policy applies incurred by an insured while providing immediate medical treatment at the time of an occurrence. However, the first aid must be given within twenty four (24) hours of the occurrence.

<u>PAYMENTS FOR BONDS</u> - The Company will pay premiums on bonds required to release attachments and to appeal, but the Company will not pay for bonds covering any aggregate amount more than the limit of liability. The Company has no obligation to apply for or purchase such bonds.

<u>SEVERABILITY OF INTERESTS</u>

Except with respect to the limit of the company's liability and any rights or duties specifically assigned in this policy to the first named insured, this policy applies: as if each named insured were the only named insured; separately to each insured against whom a claim or suit is brought.

PART VI

DEFINITIONS APPLICABLE TO ALL COVERAGES

<u>AERIAL APPLICATION</u> means application by aircraft of agricultural seeds, fertilizers, fungicides, insecticides, herbicides, defoliants, desiccants or chemicals and flights required in direct support of such which shall include maintenance flights, ferry flights, sales demonstration flights by prospective purchasers, pleasure and business flights. Ferry flights are defined as ferrying the aircraft: from one specific area of operation to another; to or from a maintenance facility in conjunction with repairs or scheduled maintenance; or delivery flights following purchase by the named insured.

<u>AVIATION MANAGER</u> means Phoenix Aviation Managers, Inc.

<u>BODILY INJURY</u> means physical injury to a person, including sickness, disease, mental anguish, or death at any time resulting therefrom.

<u>FEDERAL AVIATION ADMINISTRATION</u> means the duly constituted authority of the United States of America which has jurisdiction over civil aviation.

<u>IN FLIGHT</u> means the time commencing with the actual take-off run of the aircraft and continuing thereafter until it has completed its landing roll or, if the aircraft is a rotorcraft, from the time the rotors start to revolve under power for the purpose of flight until they subsequently cease to revolve.

<u>IN MOTION</u> means any time the aircraft is in flight or is moving under its own power or momentum from this power on the ground, or anytime the aircraft engine is on. If the aircraft is a rotorcraft, in motion means anytime the rotors are moving under engine power (or resulting momentum) or due to autorotation.

INSURED means the named insured as well as any person while using or riding in the aircraft and any person or organization (except with respect to the persons or organizations excluded from coverage under WHO IS NOT COVERED in Parts VII and VIII) legally responsible for its use, provided the actual use is with the express permission of the named insured.

NAMED INSURED means the person or organization named in Part I .

NOT IN MOTION means all circumstances sustained while the aircraft is not In Motion, and which is not the result of fire or explosion following a crash or collision while the aircraft was In Motion.

OCCURRENCE means a sudden and accidental event which is neither expected nor intended from the standpoint of an insured and which causes bodily injury or property damage; however, this shall not preclude coverage for bodily injury or property damage resulting from efforts to prevent dangerous interference with the aircraft. Continuous or repeated exposure to substantially the same conditions shall be considered one (1) occurrence. The dropping of any agricultural seeds, fertilizers, fungicides, insecticides, herbicides, defoliants, desiccants or chemical, for one (1) customer on one calendar day shall be considered one (1) occurrence.

PASSENGER means anyone, except the pilot, in, on, or boarding the aircraft for the purpose of riding or flying in the aircraft or alighting from the aircraft following a ride, flight, or attempted flight therein.

POLICY PERIOD means the inclusive dates that this policy is in effect. These dates are shown in Part I.

POLLUTANTS mean solid, liquid, gaseous, or thermal irritant or contaminant, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed.

PROPERTY DAMAGE means any physical damage to or destruction of tangible property, including loss of use of that property. Property damage does not include any testing or clean-up costs from any pollution or contamination occurrence alleged by anyone.

SOLE OWNER means ownership by the named insured with no partners, conditional sales, mortgages, liens or other encumbrance not endorsed on the policy.

SUIT means any civil lawsuit filed against the insured in any court in the United States of America (excluding Alaska and Hawaii), in which another party seeks to recover damages from the insured for bodily injury or property damage covered by this policy. Suit does not mean any hearing or proceeding before any administrative or regulatory agency regardless of the purpose for that hearing or proceeding. Suit also does not include any criminal case or proceeding.

## PART VII

### AIRCRAFT LIABILITY COVERAGE EXCLUDING CHEMICAL LIABILITY

This part describes the different kinds of Liability Coverage Excluding Chemical Liability available under this policy. Liability Coverage is designed to pay on the insured's behalf claims for damages made by someone else against the insured for bodily injury or property damage.

However, the insured must be legally responsible for the damages. Also, the damages must result from an occurrence that happens during the policy period and that involves the aircraft for which coverage has been purchased.

The kinds and limits of Liability Coverage Excluding Chemical Liability which the insured has, if any, are shown in Part I.

### WHO IS COVERED

This part covers the insured and, while operating the aircraft with the insured's express permission, the pilot(s) named in Part II. The insured and such pilot(s) are covered separately, but the most the Company will pay for any one (1) occurrence, no matter how many persons or organizations are involved or claims are made, is the applicable limit of liability shown in Part I.

<u>WHO IS NOT COVERED</u>

There are certain persons and organizations the Company will not cover if liability claims are brought or judgments are awarded against them. Such persons or organizations are:

      (a)      any officer, director, or employee who, while in the course of his or her work, injures or kills another officer, director, or employee who works for the same employer: or

      (b)      any person or organization that makes, sells, rents, repairs, or services aircraft or components; that provides instruction; or that provides pilot or flight services; but only for an occurrence which arises from any of these activities.

## TYPES OF LIABILITY COVERAGE EXCLUDING CHEMICAL LIABILITY

The following sections describe the types of Liability Coverage Excluding Chemical Liability that are available. These coverages may not have been purchased. Consult Part I to see which Liability Coverage (s) have been purchased.

<u>COVERAGE A - BODILY INJURY LIABILITY EXCLUDING PASSENGERS AND EXCLUDING CHEMICAL LIABILITY</u> - If this coverage has been purchased, the Company will pay claims for damages because of bodily injury to anyone, except the pilot and/or passenger, who is injured resulting from the ownership, maintenance, or use of the aircraft.

Two(2) limits of liability apply to this coverage: the PER PERSON limit, which regardless of the number of persons or organizations involved, is the most the Company will pay for damages due to bodily injury to any one (1) person resulting from one (1) occurrence, including damages for care and loss of services; and the PER OCCURRENCE limit, which is the most the Company will pay for damages due to all bodily injury resulting from any one (1) occurrence, no matter how many persons or organizations are involved.

<u>COVERAGE B - PROPERTY DAMAGE LIABILITY EXCLUDING CHEMICAL LIABILITY</u> - If this coverage has been purchased, the Company will pay claims for property damage to someone else's property resulting from the ownership, maintenance, or use of the aircraft. But the most the Company will pay for property damage resulting from one (1) occurrence is the limit of liability shown in PART I, no matter how many persons or organizations are involved.

<u>COVERAGE C - PASSENGER BODILY INJURY LIABILITY EXCLUDING CHEMICAL LIABILITY</u> - If this coverage as been purchased, the Company will pay claims for damages because of bodily injury to any passenger in the aircraft who is injured from the ownership, maintenance or use of the aircraft. This coverage does not apply while the aircraft is used for aerial application.

<u>COVERAGE D - COMBINED BODILY INJURY AND PROPERTY DAMAGE LIABILITY EXCLUDING PASSENGERS AND EXCLUDING CHEMICAL LIABILITY</u> If this coverage has been purchased, the Company will pay claims for damages due to bodily injury and property damage resulting from the ownership, maintenance, or use of the aircraft, except claims for damages due to bodily injury to a passenger in the aircraft. The combined limit of liability shown in PART I is the most the Company will pay for all damages because of all bodily injury and property damage resulting from any one (1) occurrence, no matter how many persons or organizations are involved.

Under Coverages A, B, C and D of this part, there is no coverage for bodily injury or property damage which is caused by or as a result of the material, product, agent, chemical, or any substance regardless of its form or nature which is to be sprayed, emitted, or discharged from the aircraft in the process of aerial application.

## WHAT THE COMPANY DOES NOT COVER UNDER THIS PART

(a) The Company will not cover bodily injury sustained by any insured under this policy.

(b) The Company will not cover losses for damage to property that is owned, rented, occupied, or used by an insured, or that is in the care custody or control of an insured. Nor will the Company cover property that is carried in the aircraft.

(c)  The Company will not cover any liability assumed by an insured under a contract or agreement, but this exclusion (f) does not apply to the assumption by the named insured of the liability of others for bodily injury or property damage in any written hold harmless agreement required by a military or governmental authority as a prerequisite to the use of an airport or an airport facility.

(d)  The Company will not cover any claim for bodily injury to any employee of an insured under this policy or its Insurer when the insured may be held liable under any worker's compensation, unemployment compensation, disability benefits, or any similar law.

(e)  The Company will not cover any claim for bodily injury or property damage due to an occurrence which arises from making, selling, renting, repairing, or servicing aircraft or components; from providing instruction; or from providing pilot or flight services.

(f)  The Company will not cover claims for bodily injury or property damage which results directly or indirectly from, is caused by, or is a result of the material, product, agent, chemical, any substance regardless of its form or nature which is to be or has been sprayed, emitted, or discharged from the aircraft in the process of aerial application.

(g)  The Company will not cover any bodily injury or property damage resulting from a nuclear energy hazard or caused by any form of radioactive contamination.

(h)  The Company will not cover an insured under this policy who is also an insured under a contract of nuclear energy liability insurance issued by the Nuclear Energy Liability Insurance Association or the Mutual Atomic Energy Liability Underwriters and in effect at the time of the occurrence resulting in such injury as sickness, disease, death or destruction. Provided such contract of nuclear energy liability insurance shall be deemed to be in effect at the time of such occurrence notwithstanding such contract has expired upon its limit of liability.

(i)  The Company will not cover claims directly or indirectly occasioned by, happening through, or in consequence of: noise (whether audible to the human ear or not), vibration, sonic boom, and any phenomena associated therewith; pollution and contamination of any kind whatsoever; electrical and electromagnetic interference; interference with the use of property, unless caused by a crash or collision of aircraft or a recorded in flight emergency causing abnormal operation. This exclusion does not apply to property damage to domestic animals caused by noise or vibration.

(j)        (1) The Company will not cover the discharge, dispersal, release, escape or seepage of petroleum substances or derivative (including any oil, refuse, or oil mixed with wastes), smoke, vapors, soot, fumes, acid, alkalis, toxic chemicals, liquids or gasses, waste materials, other irritants, contaminants, or pollutants into or upon the land, the atmosphere, or any watercourse, body of water, bog, marsh, swamp, or wetland, including but not limited to hazardous substances in the groundwater, the subsoil, or anything contained therein, regardless of whether such discharge, dispersal, release, escape, or seepage was intentional or accidental. This exclusion shall also apply to personal injury, bodily injury, or property damage arising from or in connection with clean-up of the environment or of anything contained in the preceding sentence.

(2) Nothing herein shall override any radioactive contamination or other exclusion clause attached to or forming part of this policy.

(k) The Company will not cover claims for bodily injury or property damage for which the insured may be held liable by reason of: causing or contributing to the intoxication of any person; the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or any statute, ordinance, or regulation relating to the sale, gift, distribution or use of alcoholic beverages or any illegal or controlled substance.

IN ADDITION TO THE ABOVE, PLEASE REFER TO PART IV - EXCLUSIONS APPLICABLE TO ALL COVERAGES.

## PART VIII

### AIRCRAFT CHEMICAL LIABILITY COVERAGE

This part covers the different kinds of Chemical Liability Coverage available under this policy. These coverages are designed to pay on the insured's behalf claims for damages made by someone else against the insured for bodily injury or property damage arising out of the aerial application of agricultural seeds, fertilizers, fungicides, insecticides, herbicides, desiccants, defoliants or chemicals.

However, the insured must be legally responsible for the damages. Also, the damages must result from an occurrence that happens during the policy period and that involves the aircraft described in Part II.

The kinds and limits of Chemical Liability Coverage the insured has, if any, are shown in Part L

<u>WHO IS COVERED</u>

This part covers the insured, and while operating the aircraft with the insured's express permission, the pilot(s) named in Part II. The Company will also cover the farmer, owner, and/or grower for whom the insured is performing aerial application of seeds, fertilizers, fungicides, insecticides, herbicides, defoliants, desiccants, or chemicals, but only with respect to the insured's negligence. The insured, such pilot (s), and such farmer, owner, and/or grower are covered separately. But the most the Company will pay for any (1) occurrence, no matter how many persons or organizations are involved or claims are made, is the applicable Chemical Limit of Liability shown in Part L

<u>WHO IS NOT COVERED</u>

There are certain persons and organizations the Company will not cover if liability claims are brought or judgments are awarded against them. Such persons or organizations are:

    (a)    any officer, director, or employee who, while in the course of his or her work, injures or kills another officer, director, or employee who works for the same employer: or

    (b)    any person or organization that makes, sells, rents, repairs, or services aircraft or components; that provides instruction; or that provides pilot or flight services; but only for an occurrence which arises from any of these activities.

## TYPES OF CHEMICAL LIABILITY COVERAGE

The following section describes the types of Chemical Liability Coverage that are available. The insured may not have purchased any of these coverages. Consult Part I to see which, if any, Chemical Liability Coverage(s) has been purchased.

<u>COVERAGE E - LIMITED CHEMICAL BODILY INJURY LIABILITY</u> - If this coverage has been purchased, the Company will pay claims for damages due to bodily injury caused by agricultural seeds, fertilizers, fungicides, insecticides and chemicals excluding herbicides, defoliants, and desiccants, sprayed or emitted in the process of aerial application by an aircraft for which this coverage has been purchased.

Three (3) limits of liability apply to this coverage: the PER PERSON limit which is the most the Company will pay for damages due to Limited Chemical Bodily Injury to any one (1) person resulting from any one (1) occurrence including damages for care and loss of services; the PER OCCURRENCE limit, which is the most the Company will pay for damages due to all Limited Chemical bodily injury resulting from any one (1) occurrence; and the AGGREGATE limit, which is the most the Company will pay for damages due to all Limited Chemical bodily injury resulting from all occurrences during the policy period, irrespective of the number of aircraft insured. These limits of liability are applicable no matter how many persons or organizations are involved.

<u>COVERAGE F - LIMITED CHEMICAL PROPERTY DAMAGE LIABILITY</u> - If this coverage has been purchased, the Company will pay claims for property damage to someone else's property caused by agricultural seeds, fertilizers, fungicides, insecticides and chemicals excluding herbicides, defoliants and desiccants, sprayed or emitted in the process of aerial application by an aircraft for which this coverage has been purchased.

Two (2) limits of liability apply to this coverage: the PER OCCURRENCE limit, which is the most the Company will pay for damages due to all Limited Chemical property damage resulting from any one (1) occurrence; and the AGGREGATE limit, which is the most the Company will pay for damages due to all Limited Chemical property damage resulting from all occurrences during the policy period, irrespective of the number of aircraft insured. These limits of liability are applicable no matter how many persons or organizations are involved.

<u>COVERAGE G - LIMITED COMBINED CHEMICAL BODILY INJURY AND PROPERTY DAMAGE LIABILITY</u> - If this coverage has been purchased, the Company will pay claims for damages due to bodily injury and property damage caused by agricultural seeds, fertilizers, fungicides, insecticides and chemicals excluding herbicides, defoliants, and desiccants, sprayed or emitted in the process of aerial application by an aircraft for which this coverage has been purchased.

Two (2) limits of liability apply to this coverage: the PER OCCURRENCE limit, which is the most the Company will pay for damages due to all Limited Chemical bodily injury and property damage resulting from any one (1) occurrence; and the AGGREGATE limit, which is the most the Company will pay for damages due to all Limited Chemical bodily injury and property damage resulting from all occurrences during the policy period, irrespective of the number of aircraft insured. These limits of liability are applicable no matter how many persons or organizations are involved.

COVERAGE H - COMPREHENSIVE CHEMICAL BODILY INJURY LIABILITY - If this coverage has been purchased, the Company will pay claims for damages due to bodily injury caused by agricultural seeds, fertilizers, fungicides, insecticides, herbicides, defoliants, desiccants and chemicals sprayed or emitted in the process of aerial application by an aircraft for which this coverage has been purchased.

Three (3) limits of liability apply to this coverage: the PER PERSON limit which is the most the Company will pay for damages due to Unlimited Chemical Bodily Injury to any one (1) person resulting from any one (1) occurrence including damages for care and loss of services; the PER OCCURRENCE limit, which is the most the Company will pay for damages due to all Unlimited Chemical bodily injury resulting from any one (1) occurrence; and the AGGREGATE limit, which is the most the Company will pay for damages due to all Unlimited Chemical bodily injury resulting from all occurrences during the policy period, irrespective of the number of aircraft insured. These limits of liability are applicable no matter how many persons or organizations are involved.

COVERAGE I - COMPREHENSIVE CHEMICAL PROPERTY DAMAGE LIABILITY If this coverage has been purchased, the Company will pay claims for property damage to someone else's property caused by agricultural seeds, fertilizers, fungicides, insecticides, herbicides, desiccants, defoliants and chemicals sprayed or emitted in the process of aerial application by an aircraft for which this coverage has been purchased.

Two (2) limits of liability apply to this coverage: the PER OCCURRENCE limit, which is the most the Company will pay for damages due to all Unlimited Chemical property damage resulting from any one (1) occurrence; and the AGGREGATE limit, which is the most the Company will pay for damages due to all Unlimited Chemical property damage resulting from all occurrences during the policy period, irrespective of the number of aircraft insured. These limits of liability are applicable no matter how many persons or organizations are involved.

COVERAGE J - COMPREHENSIVE COMBINED CHEMICAL BODILY INJURY AND PROPERTY DAMAGE LIABILITY If this coverage has been purchased, the Company will pay claims for damages due to bodily injury and property damage caused by agricultural seeds, fertilizers, fungicides, insecticides, herbicides, desiccants, defoliants and chemicals sprayed or emitted in the process of aerial application by an aircraft for which this coverage has been purchased.

Two (2) limits of liability apply to this coverage: the PER OCCURRENCE limit, which is the most the Company will pay for damages due to all Unlimited Chemical bodily injury and property damage resulting from any one (1) occurrence; and the AGGREGATE limit, which is the most the Company will pay for damages due to all Unlimited Chemical bodily injury and property damage resulting from all occurrences during the policy period, irrespective of the number of aircraft insured. These limits of liability are applicable no matter how many persons or organizations are involved.

DEDUCTIBLE

The Chemical Liability Deductible as stated in Item 3 of Part II will be subtracted from the amount otherwise payable by the Company for each occurrence. The insured shall pay the deductible either to the claimant or to the Company at the company's request.

## DEFINITIONS APPLICABLE TO CHEMICAL COVERAGES

CHEMICAL means any substance or mixture of substances intended to prevent, destroy, repel, or mitigate any pest, or any substance or mixture of substances intended for use as a plant or tree regulator, defoliant, or desiccant registered for aerial application. The common name of a chemical includes preparations of the chemical, in any form, having a trade or proprietary name.

COMPREHENSIVE CHEMICAL * means seeds, fertilizers, fungicides, insecticides, herbicides, desiccants, defoliants or any chemical registered for aerial application.

DEFOLIANT means a material that causes the loss of leaves from the plant, normally as a harvest aid.

DESICCANT means a material that causes the loss of leaves and kills the plant as harvest aid.

EXCLUDING CHEMICAL* means no seeds, fertilizers, fungicides, insecticides herbicides, defoliants, desiccants or chemicals or any substance regardless of form or nature. No insurance is provided under Part VIII Aircraft Chemical Liability Coverage.

FERTILIZER means any natural or manufactured material added to the soil or foliage in order to supply one or more plant nutrients.

FUNGICIDE means any material used to protect seeds, plants, and fruits from fungal

infection. HERBICIDE means any material used to kill or control plants.

INSECTICIDE means any material used to kill or control insects. (A substance or mixture of substances intended to prevent, destroy, repel, or mitigate any insects which may be present in any environment whatsoever.)

LIMITED CHEMICAL * means seeds, fertilizers, fungicides, insecticides or any chemical excluding herbicides, defoliants and desiccants.

RESIDENTIAL means an incorporated or unincorporated area occupied primarily by private housing.

*The release or distribution of sterile insects, predatory/beneficial insects, bacteria, fungi or viruses for the purpose of controlling, mitigating or exterminating insects or other pests or weeds is included in the definitions of "Unlimited Chemical" and "Limited Chemical", and is excluded from the definition of "Excluding Chemical".

## WHAT THE COMPANY DOES NOT COVER UNDER THIS PART

(a) The Company will not cover any bodily injury sustained by any insured under this policy.

(b) The Company will not cover bodily injury sustained by any member of your family or household.

(c) The Company will not cover bodily injury sustained by any passenger in the aircraft while it is being used for aerial application. Operating the aircraft for aerial application purposes includes flights to and from the place where the insured will be applying chemicals.

(d) The Company will not cover losses for damage to property that is owned, rented, occupied, or used by an insured or that is in the care custody or control of an insured. Nor will the Company cover property that is carried in the aircraft.

(e) The Company will not cover any claim for bodily injury to an employee of an insured under this policy or its Insurer when the insured may be held liable under any worker's compensation, unemployment compensation, disability benefits, or any similar law.

(f) The Company will not cover liability assumed, by the insured under any contract or agreement, but this exclusion (f) does not apply to the assumption by the named insured of the liability of others for bodily injury or property damage in any written hold harmless agreement required by a military or governmental authority as a prerequisite to the use of an airport or an airport facility.

(g) The Company will not cover an insured under this policy who is also an insured under a contract of nuclear energy liability insurance issued by the Nuclear Energy Liability Insurance Association or the Mutual Atomic Energy Liability Underwriters and in effect at the time of the occurrence resulting in such injury as sickness, disease, death or destruction. Provided such contract of nuclear energy liability insurance shall be deemed to be in effect at the time of such occurrence notwithstanding such contract has expired upon its limit of liability.

(h) The Company will not cover claims directly or indirectly occasioned by, happening through, or in consequence of: noise (whether audible to the human ear or not), vibration, sonic boom, and any phenomena associated therewith; pollution and contamination of any kind whatsoever; electrical and electromagnetic interference; interference with the use of property, unless caused by a crash or collision of aircraft or a recorded in flight emergency causing abnormal operation. This exclusion does not apply to property damage to domestic animals caused by noise or vibration. Additionally, this exclusion does not apply to bodily injury or property damage resulting from the collision of the aircraft with the surface of any object or from intentional "dumping" in an effort to avoid such collision.

(i)     (1) The Company will not cover the discharge, dispersal, release, escape or seepage of petroleum substances or derivative (including any oil, refuse, or oil mixed with wastes), smoke, vapors, soot, fumes, acid, alkalis, toxic chemicals, liquids or gasses, waste materials, other irritants, contaminants, or pollutants into or upon the land, the atmosphere, or any watercourse, body of water, bog, marsh, swamp, or wetland, including but not limited to hazardous substances in the groundwater, the subsoil, or anything contained therein, regardless of whether such discharge, dispersal, release, escape, or seepage was intentional or accidental. This exclusion shall also apply to personal injury, bodily injury, or property damage arising from or in connection with clean-up of the environment or of anything contained in the preceding sentence. However, this exclusion does not apply to the spraying or emitting of agricultural seeds, fertilizers, fungicides, insecticides, herbicides, desiccants, defoliants, or chemicals emitted from the aircraft during the process of aerial application.

(2) Nothing herein shall override any radioactive contamination or other exclusion clause attached to or forming part of this policy.

(j) The Company will not cover any bodily injury or property damage claims which occur due to the application of any seed fertilizer, fungicide, or chemical within the residential area.

(k) The Company will not cover any bodily injury or property damage resulting from the violation by any insured of any local state, or federal regulation applicable to the aerial application of seeds, fertilizers, fungicides, or chemicals.

(l) The Company will not cover any claim for bodily injury or property damage due to an occurrence which arises from making, selling, renting, repairing, or servicing aircraft or components; from providing instruction; or from providing pilot or flight services.

(m) The Company will not cover any claim for bodily injury or property damage arising from the aerial application of agricultural seeds, fertilizers, fungicides, insecticides, herbicides, defoliants, desiccants or chemicals to right-of-way or easements for public or quasi-public persons or bodies, waterways, railroads, pipelines or utility companies.

(n) The Company will not cover any claim for bodily injury or property damage arising from seeds, fertilizers, fungicides, or chemicals not included in the Chemical Coverage purchased for the aircraft involved in the occurrence.

(o) The Company will not cover any claim for bodily injury or property damage arising from agricultural seeds, fertilizers, fungicides, or chemicals excluded in the Category definitions for Excluding Chemical, Limited Chemical and Unlimited Chemical.

(p) The Company will not cover any claim for bodily injury or property damage arising from any intentional act or omission.

(q) The Company will not cover any claim for bodily injury or property damage arising from controlled and or prescribed burning whether intentionally or unintentionally set.

(r) The Company will not cover any bodily injury or property damage caused by the failure of the chemical applied to function in the manner, or for the purpose intended or for which it was contracted.

(s) The Company will not cover bodily injury caused by the existence or storage of chemicals, except injury caused by the loading or unloading of chemicals in or by the aircraft.

IN ADDITION TO THE ABOVE, PLEASE REFER TO PART IV- EXCLUSIONS APPLICABLE TO ALL COVERAGES.

## PART IX

### AIRCRAFT PHYSICAL DAMAGE COVERAGE

This part describes the two (2) kinds of coverages that are available to protect the insured against direct and accidental physical damage or loss to the aircraft. The two (2) kinds of coverage are All Risks While NOT IN MOTION (Coverage K) and All Risks While IN MOTION and NOT IN MOTION (Coverage L).

The type of coverage the insured has, if any, is shown in PART I NAMED INSURED AND COVERAGES.

ALL RISKS WHILE NOT IN MOTION (COVERAGE K)

If this coverage has been purchased, the insured is protected if the aircraft, while not in motion, suffers any kind of direct and accidental physical damage or loss or is stolen. The insured is not protected against those losses described in the LOSSES NOT COVERED section that follows.

ALL RISKS WHILE IN MOTION AND NOT IN MOTION (COVERAGE L)

If this coverage has been purchased, the insured is protected if the aircraft suffers any kind of direct and accidental physical damage or loss. The insured is also protected if the aircraft is stolen or if it disappears after take-off and is not found or heard from in sixty (60) days. The insured is not protected against those losses described in the LOSSES NOT COVERED section that follows.

LOSSES NOT COVERED

Whether the insured has All Risks While Not In Motion (Coverage K) or All Risks While IN MOTION and While NOT IN MOTION (Coverage L), Physical Damage Coverage, the Company will not cover the following:

(a)  The Company will not cover any loss that results because the aircraft cannot be used.

(b)  The Company will not cover loss of clothing or other personal items.

(c)  The Company will not cover any physical damage or loss to the aircraft if it is described in this policy as a land plane, but at the time of loss it is other than a land plane.

(d)  The Company will not cover normal wear and tear or depreciation. Nor will the Company cover physical damage or loss that is caused by and confined to freezing or mechanical, structural, or electrical failure. However, if a collision is caused by wear and tear, freezing or mechanical, structural, or electrical failure, and the collision is otherwise covered by this policy, the Company will cover the resulting physical damage or loss.

(e)  The Company will not cover physical damage or loss to the aircraft's engines or auxiliary power units which is caused by:

   (1) heat that results from the operation, attempted operation, or shutdown of the engine; or

   (2) an object not part of the engine or its accessories, whether the physical damage or loss results from ingestion of the object or not. However, if the physical damage or loss results from a single incident and the engine requires immediate repairs in compliance with the manufacturer's requirements, then this exclusion will not apply, but the IN MOTION deductible will be applied.

(f)  The Company will not cover physical damage or loss to tires unless it is caused by fire, theft, windstorm, or vandalism; or unless it occurs at the same time as other physical damage or loss covered by this policy.

(g)  The Company will not cover any physical damage or loss to the aircraft which occurs due to, during, or as the result of conversion, embezzlement, or secretion by any person or organization to whom the aircraft has been entrusted under a bailment, lease, rental agreement, conditional sale, purchase agreement, mortgage, or other encumbrance.

(h)  The Company will not cover physical damage or loss to the aircraft unless all financial interests anyone has in the aircraft are fully disclosed in this policy.

(i)  The Company will not cover loss of or damage to any agricultural seeds, fertilizers, fungicides, insecticides, herbicides. Desiccants, defoliants or chemical, carried in or on the aircraft.

(j) The Company will not cover any loss of or damage to the aircraft if the insured is not the sole owner of the aircraft, unless this policy has been endorsed by the Company to show other ownership.

DEFINITIONS APPLICABLE TO PHYSICAL DAMAGE COVERAGE

INGESTION means the sudden and unforeseen absorption of foreign material, not a part of the engine itself. The IN MOTION Deductible in Part II, Item 3 shall apply as respects ingestion.

ROTORS IN MOTION means any time the rotors are moving under engine power (or resulting momentum) or are moving due to autorotation.

**PAYMENTS UNDER PHYSICAL DAMAGE COVERAGE**

In this section the payments the Company will make if the aircraft suffers a total or partial loss or if it is stolen are described.

INSURED VALUE - The insured value is shown in Item 3 SCHEDULE OF AIRCRAFT AND COVERAGES.

TOTAL LOSS - The aircraft is a total loss if:

> (a) The cost to repair the aircraft when added to the salvage value is equal to or exceeds the insured value (b) It disappears after take-off and is not found or heard from within sixty (60) days; (c) Is stolen and not recovered; or



If the aircraft is a total loss, the Company will pay the insured value minus any deductible that applies.

PARTIAL LOSS - If the aircraft is damaged but is not a total loss, the Company will pay the reasonable cost of repair, but the Company will not pay more than the insured value less the applicable deductible. Cost of repair includes necessary labor at straight time rates, parts and the cost of replacement parts less depreciation, and the least expensive transportation charges necessary to the repair of the aircraft and its return to the place where the damage occurred or to the home airport, which ever is nearer. If the insured performs the repairs, the Company will increase the actual wages the insured has paid by one hundred percent (100%) to cover supervision and overhead, and the Company will reimburse the insured for actual costs of parts of like kind and quality.

DEDUCTIBLE - An IN MOTION deductible and/or a NOT IN MOTION deductible shown in PART II, Item 3. The deductible is the amount of covered physical damage or loss that the Company subtracts from any payment for physical damage or loss that the Company makes. Each time the aircraft suffers physical damage or loss covered by this policy, the Company will subtract the deductible amount and pay the rest of the covered physical damage or loss up to the insured value limit shown in PART II.

WHEN THE COMPANY WILL PAY - The Company will pay for covered physical damage or loss to the aircraft within sixty (60) days from the date the insured files a proof of loss and that the amount of physical damage or loss is determined as provided in this policy. The Company will deduct any premiums the insured owes and any other debts the insured has with the Company from any physical damage or loss payment made to the insured.

RECOVERED LOSS - If any lost or stolen property is found before the Company pays for the loss, the Company has the right to return the property to the insured and pay for any physical damage or loss to such property.

SALVAGE - If the aircraft has suffered physical damage or loss and the Company has paid for it, the Company is entitled to the salvage value of the aircraft or any replaced parts. The Company will not accept responsibility for the aircraft or any replaced parts. It is the insured's responsibility to deliver a clear title to the aircraft to the salvage buyer upon payment by the Company of a claim for the total loss of the aircraft.

AUTOMATIC REINSTATEMENT OF COVERAGE - If the aircraft is damaged, the Company will reduce the amount of insurance the insured has on the aircraft by the amount of damage. Once repairs are begun the Company will increase the insurance by the amount of the completed repairs until the original insured value has been restored or this policy expires.

ARBITRATION OF DISPUTES - If the Company cannot agree with the insured on the amount of physical damage or loss to the aircraft, the following procedure will be used to settle the dispute. The procedure shall be final and binding.

(1)  The insured may request in writing that the dispute be submitted for arbitration. The Company may do the same.

(2)  The insured and the Company will then each select an appraiser and will inform the other of that choice within twenty (20) days of the initial notification.

(3)  The appraisers will select a competent and impartial umpire. If the appraisers cannot agree on the umpire within fifteen (15) days, a judge of the state in which the property is located can appoint an impartial umpire if asked to do so by the insured or by the Company.

(4)  Each appraiser will appraise the physical damage or loss for each item. If the appraisers do not agree, they will submit their differences to the umpire. Agreement by two (2) of the three (3) will decide the amount of the physical damage or loss. The insured will then pay his appraiser, and the Company will pay theirs. Any other costs of the appraisal and the fees of the umpire will be divided equally.

The Company shall not be held to have waived any of our rights by any act relating to appraisal

RECOVERING PAYMENTS FROM OTHERS - If the Company makes any payment, the Company takes over the insured's right to recover the payment from anyone who is responsible for the accident or occurrence. The named insured and insured must do everything necessary to transfer this right of recovery to us, including allowing suit to be brought in the named insured's or any insured's name. The named insured and any insured must do nothing that will interfere with or prejudice the company's efforts to recover.

## PART X

### WHAT TO DO IN CASE OF AN OCCURRENCE, ACCIDENT, OR SUIT

If there is physical damage or loss to the aircraft, follow these steps:

A.  Protect the aircraft whether or not the insured thinks the physical damage or loss is covered under this policy. Any further physical damage or loss that results because the insured fail to protect the aircraft will not be covered under this policy.

B.  Notify the aviation insurance managers or your agent immediately. If there is any theft, robbery, or pilferage, also notify the police.

C.  Within sixty (60) days after the physical damage or loss, send a sworn proof of loss to the aviation insurance managers. Include the following:

(1)  the time, place, and nature of the physical damage or loss;

(2)  your interest in the damaged or lost property;

(3)  the interest anyone else has in the damaged or lost property; and

(4)  any other insurance you have on the aircraft.

RECOVERY OF AIRCRAFT - The insured also agrees to cooperate with the Company in any legal action to recover the aircraft. The Company will reimburse the insured for all reasonable expenses the insured incurs in recovering or saving the aircraft, provided the physical damage or loss is covered under this policy; however, the Company will not pay for any reward the insured offers without the company's consent.

PROOF - The insured agrees to let the Company see any damaged property at reasonable times and places. The insured also agree to be questioned under oath by someone the Company chooses and to let the Company see all relevant records and invoices or copies of these if the originals are lost.

LIABILITY CLAIM OR SUIT - In the event the insured has knowledge of a possible claim or suit or an occurrence, the insured should immediately follow this procedure:

A. Take reasonable steps to prevent other bodily injury or property damage from arising out of the same or similar conditions. However, the insured must take these steps at the his own expense unless the Company agrees to pay for them.

B. Notify the Company or the insured's agent immediately. State the time, place, and circumstances of the occurrence and the name and address of anyone who is injured and of any available witness.

C. Promptly send the Company any correspondence or legal papers that the insured receive in connection with the claim or suit.

SETTLING CLAIMS - The insured agrees to help the Company in reasonable ways with any settlement or suit. The insured agrees, for example, to attend hearings and trials, obtain and give evidence, and help the Company get witnesses to testify. The insured also agrees to help the Company collect payment in a reasonable manner from any person or organization that is liable for covered bodily injury or property damage.

Also, the insured agree that the insured will not make any payment of claims except for first aid given within the first twenty-four (24) hours following an occurrence. The insured also agree not to assume any legal responsibility without the company's permission.

**PART XI**

**VALIDATION**

This **AEROAGPOLICY** Aircraft Physical Damage, Liability, and Premises Insurance is comprised of PART I, PART II, and PARTS III -XI, and any Endorsements the Company issues. The signature of the aviation insurance manager and the countersignature of an Authorized Representative in PART II along with the signatures of our President and Secretary validate your policy.



**OLD REPUBLIC** COMPANIES

307 North Michigan Avenue
Chicago, Illinois 60601
(312) 346-8100

 **OLD REPUBLIC** INSURANCE COMPANY

 PHOENIX AVIATION
MANAGERS, INC.

### Certificate of Insurance

| | |
|---|---|
| This is to certify to<br>(Certificate Holder): | **Simmons First Bank of Jonesboro**<br>**Attn: Tony Futrell**<br>**P.O. Box 7509**<br>**Jonesboro, AR 72403** |
| The following policy(ies)<br>have been issued to: | **Meredith Flying Service, L.L.C.**<br>**5 CR 318**<br>**Jonesboro, AR 72401** |

| AIRCRAFT POLICY NO:<br>INSURANCE COMPANY: | AA 000872 01 | POLICY PERIOD: | FROM: January 28, 2014 | TO: January 28, 2015 |
|---|---|---|---|---|
| | | OLD REPUBLIC INSURANCE COMPANY | | |

| AIRCRAFT LIABILITY EXCLUDING CHEMICAL LIABILITY: | LIMITS OF LIABILITY | |
|---|---|---|
| | EACH PERSON | EACH OCCURRENCE |
| ☐ A. **Bodily Injury** Liability Excluding Passengers: | $ | $ |
| ☐ B. **Property Damage:** | $XXX | $ |
| ☐ C. **Passenger Bodily Injury:** | $ | $ |
| ☐ D. Combined **Bodily Injury & Property Damage** Liability Ex Pass: | $ | $ |

| AIRCRAFT CHEMICAL LIABILITY: | LIMITS OF LIABILITY | | |
|---|---|---|---|
| | EACH PERSON | EACH OCCURRENCE | |
| ☐ E. Limited **Chemical Bodily Injury** Liability: | $ | $<br>$ | Aggregate |
| ☐ F. Limited **Chemical Property Damage:** | $XXX | $<br>$ | Aggregate |
| ☐ G. Limited **Chemical Combined Bodily Injury/Property Damage:** | $ | $<br>$ | Aggregate |
| ☐ H. Comprehensive **Chemical Bodily Injury** Liability: | $ | $<br>$ | Aggregate |
| ☐ I. Comprehensive **Chemical Property Damage** Liability: | $XXX | $<br>$ | Aggregate |
| ☐ J. Comprehensive **Chemical Combined Bodily Injury<br>& Property Damage** Liability: | $XXX | $<br>$ | Aggregate |
| ☐ Chemical Liability Deductible: | $ | | |

| DESCRIPTION OF AIRCRAFT | PHYSICAL DAMAGE COVERAGE: | ALL RISKS GROUND AND IN-FLIGHT | |
|---|---|---|---|

| FAA<br>NUMBER | YEAR | MAKE & MODEL | INSURED<br>VALUE | DEDUCTIBLES | |
|---|---|---|---|---|---|
| | | | | NOT IN-MOTION | IN-MOTION |
| N85115 | 2002 | AT602 | $750,000.<br>$<br>$ | $250.<br>$<br>$ | $10,000.<br>$<br>$ |

☐ As respects any Aircraft Owned and Operated by the Named Insured and covered under the above referenced Policy

| AIRPORT POLICY NO:<br>INSURANCE COMPANY: | POLICY PERIOD: | FROM:<br>OLD REPUBLIC INSURANCE COMPANY | TO: |
|---|---|---|---|

| LIABILITY COVERAGES: | LIMITS OF LIABILITY | |
|---|---|---|
| ☐ M. **Aerial Applicator's Premises Liability:** | $ | each person $ | each occurrence * |

\* Refer to the Policy, an Annual Aggregate limit may apply to some coverages.

**This Certificate Holder is:**
☒ Included as a Loss Payee for Aircraft Physical Damage Coverage.
☒ Provided Breach of Warranty Coverage on Aircraft Physical Damage Coverage not to exceed 90% of the Insured Value.
☐ Included as an Additional Insured, but only with respect to operations of the Named Insured.
☐ Provided a Waiver of Subrogation, but only as respects Aircraft Physical Damage Coverage.
OTHER COVERAGES/CONDITIONS/REMARKS: NIL Physical Damage deductible first loss.

Provision has been made to give the Certificate Holder thirty (30) days Notice of Cancellation - ten (10) days for nonpayment of premium of any policy above, however, the Company assumes no responsibility for the failure to provide such notice. This Certificate does not change in any way the actual coverages provided by the policy(ies) specified above.

| | | Phoenix Aviation Representative: |
|---|---|---|
| Agency Name:<br>Agency Phone: | Davidson Solid Rock Insurance<br>501/745-8660 | |

Date: 1/28/2014



# Claims Specialists



PHOENIX AVIATION
MANAGERS, INC.

# Aviation Claims Service from an Expert Team

Please contact the claims specialist below in the nearest state to which the mishap occurred.
In addition, claims can be reported online at **www.pamav.com** under: *Claims - Report a Claim.*

| | |
|---|---|
| **Home Office**<br>Atlanta, Georgia<br>(or outside USA) | Tel: 770.590.4950<br>Fax: 770.919.8646 |
| **Baltimore, Maryland** | Tel: 410.321.0314<br>Fax: 877.223.3830 |
| Boise, Idaho | Tel: 208.350.6477<br>Fax: 208.350.6470 |
| Chicago, Illinois | Tel: 630.369.1076<br>Fax: 630.369.1221 |
| Dallas, Texas | Tel: 972.991.7223<br>Fax: 972.720.1117 |
| Denver, Colorado | Tel: 303.989.7902<br>Fax: 720.247.4884 |
| Los Angeles, California | Tel: 805.496.7181<br>Fax: 805.496.7189 |
| New Orleans, Louisiana | Tel: 504.527.6160<br>Fax: 504.527.6391 |
| St. Augustine, Florida | Tel: 904.687.0132<br>Fax: 904.239.5445 |
| St. Louis, Missouri | Tel: 636.536.0832<br>Fax: 877.223.3830 |





**All Offices Mail to:**
**PO Box 440757**
**Kennesaw, GA 30160**



EXHIBIT

tabbies

2

CSS01 (12-1)

**OLD REPUBLIC INSURANCE COMPANY**

**AERO AG POLICY**

**PART I**
**NAMED INSURED, COVERAGES, AND LIMITS**

| POLICY NUMBER: AA 000872 01 | RENEWAL OF: NEW |
|---|---|

ITEM 1. NAMED INSURED:  MEREDITH FLYING SERVICE, L.L.C.

5 CR 318
JONESBORO                          AR    72401

ITEM 2. POLICY PERIOD: FROM:   JANUARY      28 , 2014   TO:  JANUARY      28 , 2015
12:01 A.M. STANDARD TIME AT THE ADDRESS IN ITEM 1.

ITEM 3. AIRCRAFT LIABILITY COVERAGE: The Insurance afforded hereunder is only with respect to the following coverages indicated herein by specific premium charge or charges.  The limit of our liability under each such coverage shall be stated herein, subject to all the terms of the policy.

| AIRCRAFT LIABILITY | | LIMITS OF LIABILITY | | |
| EXCLUDING CHEMICAL LIABILITY | PER PERSON | PER OCCURRENCE | AGGREGATE | PREMIUM |
|---|---|---|---|---|
| A. BODILY INJURY LIABILITY EXCLUDING PASSENGERS & EXCLUDING CHEMICAL LIABILITY | $ | $ | $ | $ |
| B. PROPERTY DAMAGE EXCLUDING CHEMICAL LIABILITY | | | | |
| C. PASSENGER BODILY INJURY EXCLUDING CHEMICAL LIABILITY | | | | |
| D. COMBINED BODILY INJURY & PROPERTY DAMAGE LIABILITY EXCLUDING PASSENGERS & EXCLUDING CHEMICAL LIABILITY | | 300,000 | | 485 |

| AIRCRAFT CHEMICAL LIABILITY | PER PERSON | PER OCCURRENCE | AGGREGATE | PREMIUM |
|---|---|---|---|---|
| E. LIMITED CHEMICAL BODILY INJURY LIABILITY | $ | $ | $ | $ |
| F. LIMITED CHEMICAL PROPERTY DAMAGE | | | | |
| G. LIMITED CHEMICAL COMBINED BODILY INJURY & PROPERTY DAMAGE | | | | |
| H. COMPREHENSIVE CHEMICAL BODILY INJURY LIABILITY | | | | |
| I. COMPREHENSIVE CHEMICAL PROPERTY DAMAGE LIABILITY | | | | |
| J. COMPREHENSIVE CHEMICAL COMBINED BODILY INJURY & PROPERTY DAMAGE LIABILITY | | 300,000 | 300,000 | 5,285 |
| TOTAL LIABILITY PREMIUM: | | | | $ 5,770 |

ITEM 4. PHYSICAL DAMAGE COVERAGE:  The Insurance afforded hereunder is only with respect to the following coverages indicated herein by specific premium charge or charges.  The limit of our liability under each such coverage shall be stated herein subject to all the terms of the policy.

| | PREMIUM |
|---|---|
| K. ALL RISKS WHILE NOT IN MOTION | $ |
| L. ALL RISKS WHILE NOT IN MOTION & IN MOTION | $ 29,550 |
| TOTAL PHYSICAL DAMAGE PREMIUM: | $ 29,550 |

| ITEM 5. ENDORSEMENTS ATTACHED AT INCEPTION | |
|---|---|
| ENDORSEMENT PREMIUM: | $ |
| TERRORISM COVERAGE(TRIA): | |

| ITEM 6. AERIAL APPLICATORS | | LIMITS OF LIABILITY | | |
| PREMISES LIABILITY | PER PERSON | PER OCCURRENCE | AGGREGATE | PREMIUM |
|---|---|---|---|---|
| M. COMBINED LIMIT BODILY INJURY & PROPERTY DAMAGE | $ | $ 1,000,000 | $ | $   900 |
| N. BODILY INJURY LIABILITY | | | | |
| O. PROPERTY DAMAGE LIABILITY | | | | |

| ITEM 7. TOTAL POLICY PREMIUM | $ 36,220 |
|---|---|

AA500(11/98)

**OLD REPUBLIC INSURANCE COMPANY**

**PART II**
**SCHEDULE OF AIRCRAFT, USES AND PILOTS**

**ITEM 1. PILOTS:** The coverage afforded hereunder shall not apply unless the aircraft is operated in flight by the following pilots warranted that they hold the proper and current medical and pilot certificates with the appropriate ratings and qualifications required under the current FEDERAL AVIATION ADMINSITRATION regulations which apply to the flight involved:
Named Pilot(s):
SEE ENDORSEMENT AA637

**ITEM 2. THE USE OF THE AIRCRAFT:** This aircraft must be used for aerial application of seeds, fertilizers, fungicides, insecticides, herbicides, defoliants, desiccants, or chemicals, and flights in support of such which shall include maintenance flights, ferry flights, sales demonstration flights by prospective buyers, and pleasure and business flights. See Part VI for definitions.

**ITEM 3. SCHEDULE OF AIRCRAFT AND COVERAGES:** The following is a description of the aircraft insured under your policy. The named insured represents that each of the aircraft described in this policy is licensed under a **FEDERAL AVIATION ADMINISTRATION** Restricted Airworthiness Certificate and that the named insured is the sole and unconditional owner of the aircraft, except as otherwise noted in this policy.  The insurance afforded is only with respect to the following coverages indicated herein by a specific premium charge or charges.

<u>**AIRCRAFT DESCRIPTION, INSURED VALUE, CHEMICAL COVERAGES AND DEDUCTIBLES**</u>
Chemical Coverage (chem. Cov.) is denoted by the following abbreviations: **XC** means Excluding Chemical; **LC** means Limited Chemical; **CC** means Comprehensive Chemical. See Part VIII of the Policy for coverage definitions. Passenger Capacity (Pass. Cap.) excludes Crew. Chemical Liability Deductible is abbreviated Chem. Liab. Ded.

| FAA Number | Year Make And Model | Insured Value | Pass. Cap. | Chem. Cov. | Chem. Liab. Ded. | Deductibles - Cov. K & L Not In Motion | In Motion |
|---|---|---|---|---|---|---|---|
| 1 .N85115 | 2002 AIR TRACTOR AT-602 | 750,000 | 0 | CC | | 250 | 10,000 |

**PREMIUMS**

1 . COV  D:      $485    COV J:     $5,285   COV L:    $29,550

**ITEM 4. LOSS PAYEE:** Any payment we make for loss or damage to your aircraft will be payable to you and:
AS ENDORSED

**PRODUCER:**     DAVIDSON SOLID ROCK INSURANCE
POST OFFICE DRAWER 1099
CLINTON                    AR  72031

AA500(11/98)

OLD REPUBLIC INSURANCE COMPANY

POLICY PROVISIONS CHANGE ENDORSEMENT

THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ IT CAREFULLY.

In PART IV, EXCLUSIONS APPLICABLE TO ALL COVERAGES, paragraph (1) (a) is
amended to read:

"(a) is leased, rented, or loaned to any person or organization operating
the aircraft which provides a benefit to the insured for use of the
aircraft."

In PART VI, DEFINITIONS APPLICABLE TO ALL COVERAGES, the following definition
has been added:

"THE COMPANY" means Old Republic Insurance Company.

In PART VIII, of the policy provisions all references to Unlimited Chemical
is changed to read Comprehensive Chemical.

Nothing herein contained shall vary, alter, waive or extend any of the
terms, provisions, representations, conditions or agreements of the policy
other than as above stated.

This endorsement becomes effective JANUARY   28, 2014 to be attached to and
hereby made a part of Policy No. AA 00087201 issued through OLD REPUBLIC
INSURANCE COMPANY, issued to:    MEREDITH FLYING SERVICE, L.L.C.
                                 5 CR 318
                                 JONESBORO               AR 72401

Date of issue  01-28-2014

AA400 (01/12)

OLD REPUBLIC INSURANCE COMPANY

LIENHOLDER'S INTEREST ENDORSEMENT

This endorsement extends coverage under PART IX PHYSICAL DAMAGE COVERAGE to protect the interest of the lienholder of the aircraft shown in the Schedule below even if coverage is otherwise invalidated by any act or neglect.  The coverage under this endorsement is only for the benefit of the lienholder.

The Company will pay the valid claim of the lienholder shown below if:

   (a) there would otherwise be coverage for the claim except for any act or
       neglect resulting in our denial of payment to you; and

   (b) the lienholder:
       (1) has notified us of any change of ownership or substantial change in
           risk of which the lienholder was aware;
       (2) pays any premium due under the policy on demand if the insured has
           neglected to pay the premium; and
       (3) gives us a sworn proof of loss within sixty (60) days of the time
           the insured is required to give the company sworn proof of loss.

We will not pay any claim by anyone if you or anyone using, or possessing your aircraft with your permission embezzles, converts, or secretes the aircraft or if there has been a change in title or ownership.

If we claim your coverage is invalid, our liability to the lienholder will not exceed the least of the following:
   (a) the unpaid balance of the lien on the aircraft, less unearned interest
       and unpaid installments more than ten (10) days overdue on the date of
       the loss or damage;
   (b) the Amount of Lien shown in the Schedule below; or
   (c) 90% of the insured value of the aircraft.

We will pay the lienholder within thirty (30) days after:
   (a) the lienholder has used all reasonable means to collect the amount from
       you; and
   (b) the lienholder has given us a sworn proof of loss within sixty (60)
       days of the same time you are required to give us a sworn proof of
       loss.

If we pay the lienholder for any claim and deny payment to you because of any act or neglect that invalidates your coverage:                               s
   (a) We will be entitled to all the rights the lienholder has against you
       through the lien.  The lienholder agrees to transfer and assign to us
       all legal documents it holds regarding the collateral, security, or
       rights of recovery it has with you regarding loss or damage to the
       aircraft; and
   (b) You must pay us back in full for any payment we make to the lienholder.

OLD REPUBLIC INSURANCE COMPANY

LIENHOLDER'S INTEREST ENDORSEMENT

If we cancel Physical Damage Coverage, we agree to give thirty (30) days
prior notice to the lienholder at the address below.

SCHEDULE

| FAA REG. NO. | AMOUNT OF LIEN | LIENHOLDER NAME AND ADDRESS |
|---|---|---|
| N85115 | 90% of insured value | Simmons First Bank of Jonesboro<br>Attn: Tony Futrell<br>P.O. Box 7509<br>Jonesboro, AR 72403 |

Nothing herein contained shall vary, alter, waive or extend any of the
terms, provisions, representations, conditions or agreements of the policy
other than as above stated.

This endorsement becomes effective JANUARY   28, 2014 to be attached to and
hereby made a part of Policy No. AA 00087201 issued through OLD REPUBLIC
INSURANCE COMPANY, issued to:     MEREDITH FLYING SERVICE, L.L.C.
                                  5 CR 318
                                  JONESBORO                  AR 72401

Date of issue  01-28-2014

PAGE 2 OF 2
AA507 (11/98)

OLD REPUBLIC INSURANCE COMPANY

AERIAL APPLICATOR'S PREMISES LIABILITY

In consideration of the premium of $900., we will provide you with the following coverage and limits of liability for which a dollar amount is shown.   If no dollar amount appears below, you do not have that coverage.   We will pay on your behalf claims for damages that someone else makes against you for bodily injury or property damage for which you are legally responsible up to the limits of liability specified below, if those damages are the result of an occurrence that happens during the policy period and which results from your ownership, storage, maintenance, or use of your aircraft premises located at Jonesboro, AR including those premises necessary and incidental to the insured's operations.

| COVERAGE | LIMITS OF LIABILITY | |
|---|---|---|
| M. Combined Limit Bodily Injury and Property Damage Liability | $1,000,000. | Each Occurrence |
| N. Bodily Injury Liability | $ n/a | Each Person |
| | $ n/a | Each Occurrence |
| O. Property Damage Liability | $ n/a | Each Occurrence |

COVERAGE M – COMBINED LIMIT BODILY INJURY AND PROPERTY DAMAGE LIABILITY – If you have this coverage, we will pay claims for damages due to bodily injury and property damage resulting from your ownership, storage, maintenance, or use of the airport premises.   The EACH OCCURRENCE limit of liability shown in Item M above is the most we will pay for all damages resulting from any one (1) occurrence, no matter how many persons or organizations involved.

COVERAGE N – BODILY INJURY LIABILITY – If you have this coverage, we will pay claims for damages due to bodily injury to anyone who is injured resulting from your ownership, storage, maintenance, or use of your airport premises.   The EACH PERSON limit of liability shown above in Item N is the most we will pay for claims for damages due to bodily injury due to any one (1) occurrence, including damages for care and loss of services; and the EACH OCCURRENCE limit shown in Item N above is the most we will pay for all claims for damages due to all bodily injury resulting from any one (1) occurrence.   These limits apply regardless of the number of persons or organizations involved.

COVERAGE O – PROPERTY DAMAGE LIABILITY – If you have this coverage, we will pay for claims for property damage to someone else's property resulting from your ownership, storage, maintenance, or use of your airport premises.   The EACH OCCURRENCE limit of liability shown in Item O above, is the most we will pay for damages due to property damages resulting from any one (1) occurrence.   The AGGREGATE limit of liability shown in Item O above is the most we will pay for all claims for property damage resulting from all occurrences during the policy period.   These limits of liability apply regardless of the number of occurrences or the number of persons or organizations involved.

PAGE 1 OF 5
AA511 (11/98)

OLD REPUBLIC INSURANCE COMPANY

AERIAL APPLICATOR'S PREMISES LIABILITY

WHO IS COVERED
The coverage provided by this endorsement covers you and any of your
employees while they are acting within the scope of their duties as such.

WHO IS NOT COVERED
There are certain persons or organizations we will not cover if liability
claims for damages are brought against them.  Such persons or organizations
are:

(a) any officer, director, or employee who, while in the course of his or her
    work, injures or kills another officer, director, or employee who works
    for the same employer; or

(b) any person or organization that makes, sells, rents, or services aircraft
    or components; that provides instruction; or that provides pilot or
    flight services; but only where the occurrence arises out of these
    activities.

WHAT WE DO NOT COVER UNDER THIS ENDORSEMENT

(a) we will not cover any bodily injury or property damage arising out of any
    goods or products manufactured, constructed, altered, repaired, serviced,
    treated, sold, supplied, or distributed by any insured.

(b) we will not cover any bodily injury or property damage arising out of any
    service operations performed by any insured.

(c) we will not cover any bodily injury sustained by any insured under this
    policy.

(d) we will not cover losses for damage to property that is owned, rented,
    occupied, used, or legally processed by an insured under this policy, nor
    will we cover property which is the care, custody, or control of an
    insured under this policy.

(e) we will not cover any liability assumed by an insured under a contract or
    agreement.

(f) we will not cover the following liability losses:

    (1) claims for bodily injury to any employee of any insured or to any
        other person if such person died or was hurt in the course of
        his/her work for an insured; or

    (2) claims for which an insured or its insurer may be held liable under
        any worker's compensation, unemployment compensation, disability
        benefits, or similar law.

OLD REPUBLIC INSURANCE COMPANY

AERIAL APPLICATOR'S PREMISES LIABILITY

(g) we will not cover any bodily injury or property damage arising out of:

    (1) the storage, transportation, handling, manufacture, distribution, sale, or use of seeds, fertilizers, fungicides, or chemicals.

    (2) the disposal of any containers for seeds, fertilizers, fungicides, or chemicals.

    (3) any ground or aerial application of seeds, fertilizers, fungicides, or chemicals.

(h) we will not cover any bodily injury or property damage resulting from a nuclear energy hazard caused by any form of radioactive contamination.

(i) we will not cover claims directly or indirectly occasioned by, happening through, or in consequence of:

    (1) noise (whether audible to the human ear or not), vibration, sonic boom, or any other phenomena associated therewith;

    (2) the discharge, dispersal, release, escape, or seepage of oil, petroleum, substances or derivatives (including any oil, refuse, or oil mixed wastes), smoke, vapors, soot, fumes, acid, alkalis, toxic chemicals, liquids or gasses, waste material, other irritants, contaminants, pollutants, or contaminants of any kind into or upon land, the atmosphere, or any watercourse, body of water, bog, marsh, swamp, or wetland and including but not limited to hazardous substances in the groundwater, subsoil, or anything contained therein, regardless of whether such discharge, dispersal, release, escape, or seepage was intentional or accidental;

    (3) electrical or electromagnetic interference;

    (4) interference with the use of property;

unless caused by or resulting from a crash, fire, explosion, collision, or records in-flight emergency causing abnormal aircraft operation.

Item (2) of paragraph (i) above shall also apply to personal injury, bodily injury, or property damage arising from or in connection with clean-up costs incurred or other liability imposed by local, state, or federal laws relating to clean-up of the environment or anything contained in Item (2).

Nothing herein will override any radioactive contamination or other exclusion clause attached to or forming part of this policy.

OLD REPUBLIC INSURANCE COMPANY

AERIAL APPLICATOR'S PREMISES LIABILITY

(j) we will not cover any aircraft liability (liability of an insured arising out of an aircraft owned, rented, leased, hired, borrowed, used, maintained, or operated by or for any insured) or physical damage or loss to any insured's aircraft.

(k) we will not cover any insured for any liability arising from the selling, giving, or distributing of alcoholic beverages by an insured.

(l) if you have an interest in any other location that is not a part of the airport premises we insure, we will not protect you or anyone else for any liability an insured may have arising out of that other location or from operations conducted at that other location.  By "interest" we mean ownership, rental, lease, regular use, or control by you.

(m) we will not cover any claim arising out of the ownership, maintenance, or use of any watercraft, automobile, or other mechanically propelled vehicle, except with respect to automobiles or other mechanically propelled vehicles not licensed for use on public roads and that are used exclusively on premises owned by or rented to you.

(n) we will not cover any claim arising out of:

   (1) an air show;

   (2) the use of your airport premises for automobile, motorcycle, or snowmobile time trials or racing purposes.

   (3) any show for which an admission charge or automobile parking charge is made; or

   (4) the use, maintenance or collapse of a grandstand or seating structure designed to hold five (5) or more people.

(o) we will not cover any form of liability arising out of any form of air traffic control.

(p) we will not cover any form of liability arising out of the operation of, or any activities related to, a scheduled airline, whether an insured or someone else actually operates the airline.

(q) we will not cover any claim arising out of construction or demolition operations performed by or for an insured.

(r) we will not cover any claim for bodily injury or property damage due to war (whether or not declared), civil war, insurrection, rebellion, revolution, or to any act or condition incident to any of the foregoing.

OLD REPUBLIC INSURANCE COMPANY

AERIAL APPLICATOR'S PREMISES LIABILITY

(s) we will not cover claims for bodily injury or property damage arising out of riot, civil commotion, or mob action, or out of any act or omission in connection with the prevention or suppression of any of the foregoing.

(t) we will not cover any claims for damages for the devaluation of property or for the taking, use, acquisition of, or interference with the rights of others in property or airspace.

OTHER INSURANCE

This endorsement provides you with excess insurance.  This means that if you have other insurance covering a loss that is also covered by this endorsement, we will pay claims only when all other valid and collectible insurance covering the loss has been exhausted.  This restriction does not apply to any insurance you purchased in excess of this endorsement.

If any other insurance written through the aviation insurance managers covers the loss, the limit of liability under this policy will be reduced by the limit of liability of such other insurance.

ADDITIONAL DEFINITIONS

AIRPORT PREMISES as used in this endorsement means property used by you for the storage, servicing, or operations of aircraft.

PAGE 5 OF 5

Nothing herein contained shall vary, alter, waive or extend any of the terms, provisions, representations, conditions or agreements of the policy other than as above stated.

This endorsement becomes effective JANUARY   28, 2014 to be attached to and hereby made a part of Policy No. AA 00087201 issued through OLD REPUBLIC INSURANCE COMPANY, issued to:    MEREDITH FLYING SERVICE, L.L.C.
                                        5 CR 318
                                        JONESBORO                  AR 72401

Date of issue  01-28-2014

AA511 (11/98)

OLD REPUBLIC INSURANCE COMPANY

AMENDMENT TO "LOSSES NOT COVERED"

IT IS AGREED THAT PARAGRAPH (d) OF THE LOSSES NOT COVERED SECTION UNDER
PART IX OF THE POLICY IS CHANGED TO READ AS FOLLOWS:

WHETHER THE INSURED HAS ALL RISKS WHILE NOT IN MOTION (COVERAGE K) OR ALL
RISKS WHILE IN MOTION AND WHILE NOT IN MOTION (COVERAGE L), PHYSICAL DAMAGE
COVERAGE, THE COMPANY WILL NOT COVER THE FOLLOWING:

(d)   THE COMPANY WILL NOT COVER ANY LOSS OR DAMAGE DUE AND CONFINED TO WEAR
AND TEAR, DETERIORATION, FREEZING, MECHANICAL, HYDRAULIC, PNEUMATIC,
STRUCTURAL OR ELECTRICAL BREAKDOWN OR FAILURE, INCLUDING ANY SUCH LOSS OR
DAMAGE CAUSED IN WHOLE OR IN PART BY A DEFECTIVE PRODUCT OR THE NEGLIGENT
ACT OR OMISSION OF ANY PERSON OR ENTITY.

FOR PURPOSES OF THIS EXCLUSION, DAMAGE CAUSED BY THE BREAKDOWN, FAILURE
OR MALFUNCTION OF ANY INTERNAL ENGINE COMPONENT, OR ANY ACCESSORY, COMPONENT
OR PART THAT IS ATTACHED TO THE ENGINE, IS CONSIDERED A MECHANICAL BREAKDOWN
OF THE ENTIRE ENGINE AND IS EXCLUDED.

Nothing herein contained shall vary, alter, waive or extend any of the
terms, provisions, representations, conditions or agreements of the policy
other than as above stated.

This endorsement becomes effective JANUARY   28, 2014 to be attached to and
hereby made a part of Policy No. AA 00087201 issued through OLD REPUBLIC
INSURANCE COMPANY, issued to:   MEREDITH FLYING SERVICE, L.L.C.
                                5 CR 318
                                JONESBORO              AR 72401


Date of issue   01-28-2014


AA560 (09/05)

OLD REPUBLIC INSURANCE COMPANY

ARKANSAS AMENDATORY ENDORSEMENT

It is agreed that:

    1.  The following sentence is hereby deleted from the "Arbitration of Disputes" provision:

        "The procedure shall be final and binding."

    2.  The deleted sentence will be replaced with the following:

        "The procedure shall be non-binding and voluntary."

Nothing herein contained shall vary, alter, waive or extend any of the terms, provisions, representations, conditions or agreements of the policy other than as above stated.

This endorsement becomes effective JANUARY   28, 2014 to be attached to and hereby made a part of Policy No. AA 00087201 issued through OLD REPUBLIC INSURANCE COMPANY, issued to:   MEREDITH FLYING SERVICE, L.L.C.
                                          5 CR 318
                                          JONESBORO                  AR 72401

Date of issue   01-28-2014

AA577 (01/99)

OLD REPUBLIC INSURANCE COMPANY

"CARE CUSTODY OR CONTROL" AMENDMENT

It is agreed that:

    Part VII, "AIRCRAFT CHEMICAL LIABILITY COVERAGE EXCLUDING CHEMICAL
LIABILITY" "WHAT THE COMPANY DOES NOT COVER UNDER THIS PART" Paragraph (b);
and Part VIII ("AIRCRAFT CHEMICAL LIABILITY COVERAGE" "WHAT THE COMPANY
DOES NOT COVER UNDER THIS PART") Paragraph (d), are amended to read
as follows:

The company will not cover losses for damage to property that is
owned, rented, occupied, or used by the Named Insured, or that is in
the care, custody or control of the Named Insured. Nor will the Company
cover property that is carried in the aircraft.

Nothing herein contained shall vary, alter, waive or extend any of the
terms, provisions, representations, conditions or agreements of the policy
other than as above stated.

This endorsement becomes effective JANUARY   28, 2014 to be attached to and
hereby made a part of Policy No. AA 00087201 issued through OLD REPUBLIC
INSURANCE COMPANY, issued to:      MEREDITH FLYING SERVICE, L.L.C.
                                   5 CR 318
                                   JONESBORO              AR 72401

Date of issue  01-28-2014

AA597 (07/01)

OLD REPUBLIC INSURANCE COMPANY

PILOT(S) ADDITION/DELETION

It is agreed that Part II, Item 1: PILOTS is completed as follows:

Darrell Meredith or

Any Commercial pilot between the ages of 25 to 65 having a minimum of 2,000
total logged hours including 500 turbine Ag hours and 50 hours in the make
and model aircraft insured herein.

Nothing herein contained shall vary, alter, waive or extend any of the
terms, provisions, representations, conditions or agreements of the policy
other than as above stated.

This endorsement becomes effective JANUARY    28, 2014 to be attached to and
hereby made a part of Policy No. AA 00087201 issued through OLD REPUBLIC
INSURANCE COMPANY, issued to:    MEREDITH FLYING SERVICE, L.L.C.
                                 5 CR 318
                                 JONESBORO                AR 72401

Date of issue   01-28-2014

AA637 (06/99)

OLD REPUBLIC INSURANCE COMPANY

AMEND SCHEDULE OF AIRCRAFT AND COVERAGES

It is agreed that Part II, Item 3: SCHEDULE OF AIRCRAFT AND COVERAGES, is amended as follows:

The deductible will not apply to the first physical damage loss occuring during the policy period.

Nothing herein contained shall vary, alter, waive or extend any of the terms, provisions, representations, conditions or agreements of the policy other than as above stated.

This endorsement becomes effective JANUARY   28, 2014 to be attached to and hereby made a part of Policy No. AA 00087201 issued through OLD REPUBLIC INSURANCE COMPANY, issued to:      MEREDITH FLYING SERVICE, L.L.C.
                                            5 CR 318
                                            JONESBORO                    AR 72401

Date of issue   01-28-2014

AA651 (06/99)

OLD REPUBLIC INSURANCE COMPANY

CANCELING OR CHANGING THE POLICY

It is agreed that Policy Part V, General Provisions, Changing this Policy,
is amended to include the following paragraph:

    If the Named Insured cancels or requests substitution, addition
    or deletion of aircraft and/or alteration of coverage, the minimum
    earned premium shall be computed according to the Minimum Earned
    Premium Scale.

Nothing herein contained shall vary, alter, waive or extend any of the
terms, provisions, representations, conditions or agreements of the policy
other than as above stated.

This endorsement becomes effective JANUARY   28, 2014 to be attached to and
hereby made a part of Policy No. AA 00087201 issued through OLD REPUBLIC
INSURANCE COMPANY, issued to:    MEREDITH FLYING SERVICE, L.L.C.
                                 5 CR 318
                                 JONESBORO                 AR 72401

Date of issue   01-28-2014

AA908 (10/02)

OLD REPUBLIC INSURANCE COMPANY

DATE RECOGNITION EXCLUSION ENDORSEMENT

This policy does not cover any claim, damage, injury, loss, cost, expense or liability (whether in contract, tort, negligence, product liability, misrepresentation, fraud or otherwise) of any nature whatsoever arising from or occasioned by or in consequence of (whether directly or indirectly and whether wholly or partly):

(a) the failure or inability of any computer hardware, software, integrated circuit, chip or information technology equipment or system (whether in the possession of the Insured or of any third party) to accurately or completely process, exchange or transfer year, date or time data or information in connection with any change of year, date or time; whether on or before or after such change of year, date or time;

(b) any implemented or attempted change or modification of any computer hardware, software, integrated circuit, chip or information technology equipment or system (whether in the possession of the Insured or of any third party) in anticipation of or in response to any such change of year, date or time, or any advice given or services performed in connection with any such change or modification;

(c) any non-use or unavailability for use of any property or equipment of any kind whatsoever resulting from any act, failure to act or decision of the Insured or of any third party related to any such change of year, date or time;

and any provision in this Policy concerning any duty of Insurers to investigate or defend claims shall not apply to any claims so excluded.

Nothing herein contained shall vary, alter, waive or extend any of the terms, provisions, representations, conditions or agreements of the policy other than as above stated.

This endorsement becomes effective JANUARY  28, 2014 to be attached to and hereby made a part of Policy No. AA 00087201 issued through OLD REPUBLIC INSURANCE COMPANY, issued to:     MEREDITH FLYING SERVICE, L.L.C.
                                        5 CR 318
                                        JONESBORO              AR 72401

Date of issue  01-28-2014

2000a (03/01)

OLD REPUBLIC INSURANCE COMPANY

WAR, HI-JACKING AND OTHER PERILS EXCLUSION CLAUSE

It is agreed that exclusions 3 and 4 of Policy Part IV EXCLUSIONS APPLICABLE
TO ALL COVERAGES are deleted and the following are substituted therefore:

This policy does not cover claims caused by:

(a) War, invasion, acts of foreign enemies, hostilities (whether war be
    declared or not), civil war, rebellion, revolution, insurrection,
    martial law, military or usurped power or attempts at usurpation of
    power.

(b) Any hostile detonation of any weapon of war employing atomic or nuclear
    fission and/or fusion or other like reaction or radioactive force or
    matter.

(c) Strikes, riots, civil commotions or labor disturbances.

(d) Any malicious act or act of sabotage.

(e) Confiscation, nationalization seizure, restraint, detention,
    appropriation, requisition for title or use by or under the order of any
    Government (whether civil, military or de facto) or public or local
    authority.

(f) Hi-jacking or any unlawful seizure or wrongful exercise of control of
    the aircraft or crew in flight (including any attempt at such seizure
    or control) made by any person or persons on board the aircraft acting
    without the consent of the insured.

(g) All loss, cost or expense arising out of or related to, either directly
    or indirectly, any deliberate, unlawful act that includes, involves or
    is associated with, in whole or in part, the use or threatened use of,
    or release or threatened release or escape of, any pathogenic,
    biological, chemical agent, material, device or weapon, and any action
    taken to hinder, defend against or respond to any such activity.  This
    exclusion applies regardless of any other cause or event that in any way
    contributes concurrently or in any sequence to such loss, cost or
    expense.

PAGE 1 OF 2
AA48C (01/07)

OLD REPUBLIC INSURANCE COMPANY

WAR, HI-JACKING AND OTHER PERILS EXCLUSION CLAUSE


Furthermore, this policy does not cover claims arising whilst the aircraft is outside the control of the "insured" by reason of the above perils. The aircraft shall be deemed to have been restored to the control of the "insured" in the safe return of the aircraft to the "insured" at an airfield not excluded by the geographical limits of this policy, and entirely suitable for the operation of the aircraft (such safe return shall require that the aircraft be parked with engines shut down and under no duress).


Nothing herein contained shall vary, alter, waive or extend any of the terms, provisions, representations, conditions or agreements of the policy other than as above stated.

This endorsement becomes effective JANUARY   28, 2014 to be attached to and hereby made a part of Policy No. AA 00087201 issued through OLD REPUBLIC INSURANCE COMPANY, issued to:    MEREDITH FLYING SERVICE, L.L.C.
                                        5 CR 318
                                        JONESBORO                AR 72401


Date of issue   01-28-2014

PAGE 2 OF 2
AA48C (01/07)

OLD REPUBLIC INSURANCE COMPANY

ARKANSAS CANCELLATION AMENDMENT

THIS AMENDMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.

In compliance with the provisions of the laws of Arkansas, we agree to the following amendments of your policy:

The CANCELLATION PROVISIONS in this policy which are inconsistent with the following provisions are replaced by these provisions. All other provisions in this policy remain in force.

Either you or we can cancel this policy at any time by giving the other party written notice. If we cancel, notice may be mailed or delivered to you at your mailing address shown on the COVERAGE DATA PAGE.  Proof of mailing of the notice or delivery of the notice will be proof that you were informed of the cancellation.  We must mail notice to you at least 20 days before the effective date of the cancellation.

1. If this policy has been in effect 60 days or less, we may cancel this policy by sending by certified mail, or delivering, to you a written notice at your last mailing address known to us.

    Cancellation will be effective:

      a. 10 days after you receive notice of cancellation if we cancel for nonpayment of premium; or

      b. 60 days after you receive notice of cancellation if we cancel for any other reason, unless we specify a later date in our notice as the effective date of cancellation.

2. After the policy has been in effect for 60 days or more, we may cancel your policy for one or more of the following reasons:

      a. Nonpayment of premium

      b. Fraud or material misrepresentation made by or with your knowledge in obtaining the policy, continuing the policy or in presenting a claim under the policy;

      c. The OCCURRENCE of a material change in the risk which substantially increases any hazard insured against after policy issuance;

      d. Violation of any local, fire, health, safety, building or construction regulation or ordinances with respect to any insured property or the occupancy of the property, which substantially increases any hazard insured against under the policy;

      e. Nonpayment of membership dues in those cases where the bylaws, agreements or other legal instruments of ours; or

OLD REPUBLIC INSURANCE COMPANY

ARKANSAS CANCELLATION AMENDMENT

 f. A material violation of a material provision of this policy.

3. By sending by certified mail, or delivering, to you and any lienholder or loss payee named in the policy, a written notice, stating the reason(s) for cancellation, at the last mailing address known to us.

 Cancellation will be effective:

  a. 10 days after you receive notice of cancellation if we cancel for non-payment of premium; or

  b. 20 days after you receive notice of cancellation if we cancel for fraud or material misrepresentation by you; or

  c. 60 days after you receive notice of cancellation if we cancel for any other permissible reason.

4. When we cancel this policy, the unused premium will be returned on a pro-rata basis, which is computed in this way:

  a. First, we calculate how much time there is between the cancellation date and the day this policy expires.

  b. We then figure out the percentage of your POLICY PERIOD that this time represents.

  c. Finally, we multiply this percentage by the amount of your premium. The result is the unearned premium that we return to you.

5. If you cancel this policy, we will compute the unused premium on a pro-rata basis, less 10%.

We may pay the unearned premium at the time of cancellation or as soon as reasonably possible after the cancellation. However, our payment of the unearned premium will not affect the cancellation of the policy.

WHEN WE DO NOT RENEW

1. If we decide not to renew this policy, we will mail to you written notice of non-renewal at least 60 days before:

  a. Its expiration date; or

  b. Its anniversary date, if it is a policy written for a term of more than one year and with no fixed expiration date.

  c. However, we are not required to send this notice if non-renewal is due to your failure to pay premium required for renewal.

OLD REPUBLIC INSURANCE COMPANY

ARKANSAS CANCELLATION AMENDMENT

2. We will mail our notice to your mailing address last known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

Questions about your insurance?

Answers to questions about your insurance, coverage information or assistance in resolving complaints can be obtained by calling Old Republic Insurance Company, at 1-800-766-5673.

Your Insurance Company is:

   Old Republic Insurance Company

Your Insurance Agent is: DAVIDSON SOLID ROCK INSURANCE
                         POST OFFICE DRAWER 1099
                         CLINTON, AR 72031

Your State Insurance Department is:

Arkansas Insurance Department
Consumer Services Division
1200 West Third Street
Little Rock, Arkansas 72201-1904
Telephone: (501) 371-2640 or (800) 852-5494

If we at Old Republic Insurance Company fail to provide you with reasonable and adequate service, you should feel free to contact the Arkansas Insurance Department at the above address.

Nothing herein contained shall vary, alter, waive or extend any of the terms, provisions, representations, conditions or agreements of the policy other than as above stated.

This endorsement becomes effective JANUARY   28, 2014 to be attached to and hereby made a part of Policy No. AA 00087201 issued through OLD REPUBLIC INSURANCE COMPANY, issued to:     MEREDITH FLYING SERVICE, L.L.C.
                                         5 CR 318
                                         JONESBORO            AR 72401

Date of issue   01-28-2014

PAGE 3 OF 3
ARPAM (06/10)

OLD REPUBLIC INSURANCE COMPANY

EXCLUSION OF CERTIFIED ACTS OF TERRORISM

THIS AMENDMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

A. In consideration of the premium charged, it is agreed that this policy is amended as follows:

This insurance does not apply to:

CERTIFIED ACTS OF TERRORISM

Any loss, damage, "bodily injury" or "property damage" that in any way, directly or indirectly, arises out of, relates to or results from a "CERTIFIED ACT OF TERRORISM" including action in hindering or defending against an actual or expected incident of a "CERTIFIED ACT OF TERRORISM".

B. The following definitions are added:

1. For the purposes of this amendment, "any injury or damage" means any injury or damage covered under any Coverage Part to which this amendment is applicable, and includes but is not limited to "bodily injury", "property damage", personal and advertising injury, "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

2. "CERTIFIED ACT OF TERRORISM" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the Terrorism Risk Insurance Act of 2002 and as amended with the Terrorism Risk Insurance Program Reauthorization Extension Act of 2007, The Federal Terrorism Risk Insurance Act of 2002, as amended, sets forth the following criteria for a "certified act of terrorism":

a) The act resulted in aggregate losses in excess of $5 million; and

b) The act is to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals acting as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

c) Any certification of, or determination not to certify, an act of terrorism under this paragraph shall be final, and shall not be subject to judicial review.

PAGE 1 OF 2

CTXGA (01/08)

OLD REPUBLIC INSURANCE COMPANY

EXCLUSION OF CERTIFIED ACTS OF TERRORISM

    d) The Secretary may not delegate or designate to any other officer, employee, or person, any determination under this paragraph of whether, during the effective period of the Program, an act of terrorism has occurred.

C. We will not pay for "any injury or damage" caused directly or indirectly out of an act of terrorism including action in hindering, defending against, or responding to an actual or expected incident of "terrorism" when one or more of the following are attributed to an incident of TERRORISM including a CERTIFIED ACT OF TERRORISM:

    1. The TERRORISM involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

    2. The TERRORISM is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

    3. Radioactive material is released, and it appears that one purpose of the TERRORISM was to release such material; or

    4. The TERRORISM is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

    5. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the TERRORISM was to release such materials.

Nothing herein contained shall vary, alter, waive or extend any of the terms, provisions, representations, conditions or agreements of the policy other than as above stated.

This endorsement becomes effective JANUARY   28, 2014 to be attached to and hereby made a part of Policy No. AA 00087201 issued through OLD REPUBLIC INSURANCE COMPANY, issued to:      MEREDITH FLYING SERVICE, L.L.C.
                                         5 CR 318
                                         JONESBORO                AR 72401

Date of issue   01-28-2014

PAGE 2 OF 2
CTXGA (01/08)

OLD REPUBLIC INSURANCE COMPANY

MEXICO - WARNING

THIS IS A WARNING - PLEASE READ IT CAREFULLY.

Even though the coverage territory under this policy may include Mexico, you are strongly encouraged to purchase a separate Mexican liability insurance policy through a Mexican insurance company for any travel to Mexico or through Mexican airspace.

You may be detained for hours or spend many days in jail if you do not carry the recommended policy aboard your aircraft and provide proof of coverage when requested by the Mexican authorities.

It is recommended that you purchase this coverage from a Company licensed under the laws of Mexico to write such insurance to mitigate any potential complications or other penalties possible under the laws of Mexico, including the possible impoundment of your aircraft.

GFMEX (08/11)

OLD REPUBLIC INSURANCE COMPANY

POLICYHOLDER DISCLOSURE

NOTICE OF TERRORISM INSURANCE COVERAGE

You are hereby notified that under the Terrorism Risk Insurance Act, as extended on December 26, 2007 with the enactment of the Terrorism Risk Insurance Program Reauthorization Extension Act of 2007, that you now have a right to purchase insurance coverage for losses resulting from acts of terrorism, as defined in Section 102(1) of the Act:

The term "act of terrorism" means any act that is certified by the Secretary of the Treasury-in concurrence with the Secretary of State, and the Attorney General of the United States-to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals acting as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE.

THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURER'S LIABILITY FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

You have a right to purchase insurance coverage for losses arising from terrorism, as defined in the Act.  Unless you elect to purchase the coverage we will attach exclusion for Acts of Terrorism, as defined in the Act, to your policy.

PDPAM (01/08)

OLD REPUBLIC INSURANCE COMPANY

POLICYHOLDER DISCLOSURE

ACCEPTANCE OR REJECTION OF TERRORISM INSURANCE COVERAGE

YOU HAVE FORTY FIVE (45) DAYS TO CONSIDER THIS OFFER OF COVERAGE FOR ACTS OF TERRORISM, AS DEFINED IN THE ACT.  FAILURE TO RETURN THIS SIGNED FORM INDICATING AN ELECTION TO PURCHASE TERRORISM COVERAGE, AS DEFINED IN THE ACT WILL BE DEEMED YOUR REJECTION OF TERRORISM COVERAGE, AS DEFINED IN THE ACT.

Please indicate your selection by an X:

____    I hereby elect to purchase terrorism coverage for Acts of Terrorism, as defined in the Act, for a premium of:

       1. Physical Damage Coverage: $ As Quoted

       2. Liability Coverage:     $ As Quoted

____    I hereby elect to have the exclusion for Acts of Terrorism, as defined in the Act, added to my policy.  I understand that I will have no coverage for losses arising from terrorism, as defined in the Act.

        Policy Number: AA 00087201

          Insured: MEREDITH FLYING SERVICE, INC.
                  5 CR 318

                  JONESBORO, AR 72401

                  Policyholder/Applicant's Signature

                  Print Name/Title

                  Date

PDPAM (01/08)

OLD REPUBLIC INSURANCE COMPANY

ASBESTOS EXCLUSION ENDORSEMENT


This policy shall not apply to:

1. "bodily injury", sickness, disease, occupational disease, disability, shock, death, mental anguish, mental injury, "property damage" or any other claim whatsoever arising out of or related to asbestos or the exposure to asbestos, asbestos fibers, asbestos dust, or any product or material containing asbestos or the failure of any product or material containing asbestos or the existence of asbestos in any place or thing in the atmosphere, land, or any water course or body of water;

2. any loss, cost or expense arising out of testing for, monitoring, cleaning up, containing, treating, or removing asbestos or any product or material containing asbestos;

3. any obligation to defend or indemnify due in whole or in part to any claim or suit against any "insured" alleging damages arising from or related to asbestos excluded by paragraphs 1 or 2 above.


Nothing herein contained shall vary, alter, waive or extend any of the terms, provisions, representations, conditions or agreements of the policy other than as above stated.

This endorsement becomes effective JANUARY  28, 2014 to be attached to and hereby made a part of Policy No. AA 00087201 issued through OLD REPUBLIC INSURANCE COMPANY, issued to:    MEREDITH FLYING SERVICE, L.L.C.
                                         5 CR 318
                                         JONESBORO                      AR 72401


Date of issue  01-28-2014

PA313 (02/05)